## CAMPBELL *v.* GORDON AND WIFE.

<div style="margin-note">
A certificate by a competent court, that an alien has taken the oath prescribed by the act respecting naturalization, raises a presumption that the court was satisfied as to the moral character of the alien, and of his attachment to the principles of the constitution of the United States, &c. The oath, when taken, confers the rights of a citizen. It is not necessary that there
</div>

THIS was an appeal from a decree of the circuit court for the district of Virginia, dismissing the bill of the complainant.

The case was stated by WASHINGTON, J. in delivering the opinion of this court, as follows :

" The object of the bill was to rescind a contract made between the appellant and Robert Gordon, the appellee, for the sale of a tract of land by the latter to the former, upon the ground of a defect of title. The facts in the case, which are not disputed, appear to be as follows. The land which forms the subject of dispute belonged to James Currie, a citizen of Virginia, who died seised thereof in fee, on the 23d of April, 1807, intestate, and without issue. James Currie had one brother of the whole blood, named William, who, prior to the 14th day of October, in the year 1795, was a subject of the King of Great Britain, but who emi-

grated to the United States, and on the day last men-
tioned, at a district court held at Suffolk, in Virginia,
took the oath prescribed by the act of congress, for en-
titling himself to the rights and privileges of a citizen.
At the time when this oath was taken, William Currie
had one daughter, *Janetta*, the wife of the appellee,
who was born in Scotland. She came to the United
States in October, 1797, whilst an infant, during the
life of her father, and hath ever since continued to re-
side in the state of Virginia. William Currie died prior
to the 23d of April, 1807."

*C. Lee* and *F. S. Key*, for the appellant, contended,

1. That William Currie was not duly naturalized.

2. That if he was, yet his daughter Janetta, being
in Scotland at the time of her father's naturalization,
was not thereby naturalized.

1. William Currie was not duly naturalized.

The certificate of his naturalization was as follows,
viz.

"At a district court held at Suffolk, October the
14th, 1795, William Currie, late of Scotland, mer-
chant, who hath migrated into this commonwealth,
this day in open court, in order to entitle himself to the
rights and privileges of a citizen, made oath that for
two years last past he hath resided in and under the ju-
risdiction of the United States, and for one year
within this commonwealth, and also that he will sup-
port the constitution of the United States, and abso-
lutely and entirely renounce and abjure all allegiance
and fidelity to any foreign prince, or other state what-
soever, particularly to the King of Great Britain.

"A Copy,
"Teste,
"*John C. Littlepage.*"

CAMPBELL
v.
GORDON.

should be an
order of court
admitting him
to become a
citizen.

The children
of persons duly
naturalized be-
fore the 14th of
April, 1802, be-
ing under age
at the time of
the naturaliza-
tion of their pa-
rent, were, if
dwelling in the
United States,
on the 14th of
April, 1802, to
be considered
as citizens of
the United
States.

The original memorandum made upon the minutes of the court, was as follows :

"At a district court held at Suffolk, October the 14th, 1795, William Currie, native of Scotland, migrated into the commonwealth, took the oath," &c.

There was also a deposition of a deputy clerk, who states that he acted as deputy to Mr. Littlepage, at, before, and after the date of the entry respecting Mr. Currie's naturalization. That upon examining the order-books of the said court, he finds the entries made in all cases where persons were admitted to become citizens under the act of congress, at and prior to October term, 1795, to be agreeably to the form used in the case of Mr. Currie. That however informal these entries may have been in not stating that it appeared to the court that the persons who took the oaths were of good moral character, and were admitted citizens; he is sensible every requisite of the law in this, as well as in all other similar instances, was complied with to the satisfaction of the court, and that the omission has been a clerical one.

He also finds, from the order-book, that at May term, 1796, the form of the entry was altered so as to express the applicant to be of good moral character, &c.

The application was made under the 2d section of the act of January 29, 1795, (*vol.* 3. *p.* 163.) which provides that any alien then residing within the limits, and under the jurisdiction of the United States, may be admitted to become a citizen, on his declaring, on oath or affirmation, " that he has resided two years at least within and under the jurisdiction of the same, and one year at least within the state or territory where such court is at the time held; that he will support the constitution of the United States, and that he doth absolutely and entirely renounce and abjure all allegiance and fidelity to any foreign prince, potentate, state or sovereignty whatever, and particularly by name, the prince, potentate, state or sovereignty,

whereof he was before a citizen or subject; and more- CAMPBELL
over, on its appearing to the satisfaction of the court, v.
that during the said term of two years he has behaved GORDON.
as a man of good moral character, attached to the con-
stitution of the United States, and well disposed to the
good order and happiness of the same."

" All of which proceedings, required in this pro-
viso to be performed, in the court, shall be recorded
by the clerk thereof."

The *first* section of the act requires only the oath
of the party himself to be recorded; but the 2d sec-
tion requires *all the proceedings* to be recorded.

When a matter is directed by act of parliament to
be recorded, it cannot be proved otherwise than by
record. *Peake's N. P. Cas.* p. 132. The deposition
of the deputy clerk is not competent evidence to prove
what ought to have appeared upon the record.

It does not appear upon the record that the court
was satisfied as to the moral character of Mr. Currie,
or his attachment to the constitution of the United
States, or that the court admitted him to become a citi-
zen. They must either show an order of the court
for his admission, *or* they must show that every thing
has been done to entitle him to become a citizen.

No decision goes farther than that the declaration of
a competent court that every thing has been done ac-
cording to law, is sufficient, and dispenses with showing
*how* it was done. But the court has not said so, nor
does the record show it. Proof of good character,
&c. is not a prerequisite to permission to take the oath;
if it was, the admission to take the oath might be consi-
dered as evidence that the court was satisfied as to the
moral character, &c. His application to the court was
not to take the oath, but to be admitted a citizen.

The " *&c.*" in the minutes, might have been ex-
tended *by the clerk*, according to his usual custom;
but this court cannot undertake to extend it, or to say

what it means. Certainly not without direct and positive proof of its meaning.

2. But if William Currie was duly admitted a citizen, yet his daughter Janetta, being then in Scotland, was not thereby naturalized.

The words of the 3d section of the act of 1795 are, " that the children of persons duly naturalized, *dwelling within the United States,* and being under the age of 21 years, *at the time of such naturalization,*" " shall be considered as citizens of the United States."

Janetta, the daughter of William Currie, was not dwelling within the United States, at the time of his naturalization.

The words, " at the time of such naturalization," apply as well to the residence of the child as to her age.

If the child be naturalized by the naturalization of the father, she must be naturalized *eo instanti.* It cannot be a naturalization, or not, according to a future event.

The case would rarely happen of a parent coming to this country, residing two years, becoming a citizen, and leaving his children in a foreign country. Congress meant to provide for the more common case of a man coming with his children. They intended that all that were with him, under age at the time of his naturalization should partake of the benefit of his act. But they could not mean that the naturalization of a father should naturalize all his progeny under age, wherever they resided. Reasons of policy would forbid it. Their education, manners, habits, prejudices, and prepossessions would all be foreign, and uncongenial with our manners, principles, and systems of government. A child might in this manner become a citizen without renouncing his title of nobility.

The act of 1795 is to have the same construction

as the act of 1802, *vol.* 6. *p.* 79. § 4. 2 *Tuck. Bl.* 249. CAMPBELL
1 *Tuck. Bl. part* 2. *Appendix*, 101.

*v.*

GORDON.

*Swann*, contra.

The "*&c.*" in the clerk's minutes, means every thing that was necessary to be done to entitle Mr. Currie to become a citizen. If the requisites of the statute were complied with, it required the order of the court to admit him to become a citizen. He became such by virtue of the act of congress. The testimony as to moral character, and attachment to the constitution of the United States, may be taken out of court, or the court may be satisfied of their own knowledge. He was naturalized *de facto* when he complied with the requisites of the act, and the neglect or error of the clerk cannot deprive him of the privileges of a citizen.

It was immaterial where the child was, if she was under age at the time of her father's naturalization.

*February* 20.

WASHINGTON, J. after stating the case as before mentioned, delivered the opinion of the court as follows:

The title of the appellees to the land in question being disputed only upon the ground of the alienage of the female appellee, the court take it for granted that there is no other objection to its validity. It is contended, by the counsel for the appellant, that Janetta, who claims as heir to James Currie, is an alien, inasmuch as she has, by no act of her own, entitled herself to the rights and privileges of a citizen, and cannot claim those rights in virtue of her migration to the United States, and of any acts performed by her father. First, because her father was not *duly* naturalized; and, secondly, because, if he were, she was not, at the time of her father's naturalization, dwelling within the United States.

CAMPBELL
v.
GORDON.

In support of the first objection it is contended that, although the oath prescribed by the second section of the act of congress entitled "An act to establish a uniform rule of naturalization, and to repeal the act heretofore passed on that subject," passed the 29th of January, 1795, was administered to the said William Currie, by a court of competent jurisdiction, still it does not appear, by the certificate granted to him by the court, and appearing in the record, that he was, by the judgment of the court, *admitted a citizen*, or that the court was satisfied that, during the term of two years, mentioned in the same section, he had behaved as a man of good moral character, attached to the constitution of the United States, and well disposed to the good order and happiness of the same.

It is true, that this requisite to his admission is not stated in the certificate ; but it is the opinion of this court, that the court of Suffolk must have been satisfied as to the character of the applicant, or otherwise a certificate, that the oath prescribed by law had been taken, would not have been granted.

It is unnecessary to decide whether, in the order of time, this satisfaction, as to the character of the applicant, must be first given, or whether it may not be required after the oath is administered, and, if not then given, whether a certificate of naturalization may not be withheld. But if the oath be administered, and nothing appears to the contrary, it must be presumed that the court, before whom the oath was taken, was satisfied as to the character of the applicant. The oath, when taken, confers upon him the rights of a citizen, and amounts to a judgment of the court for his admission to those rights. It is, therefore, the unanimous opinion of the court, that William Currie was duly naturalized.

The next question to be decided is, whether the naturalization of William Currie conferred upon his daughter the rights of a citizen, after her coming to, and residing within, the United States, she having been

4

a resident in a foreign country at the time when her father was naturalized.

Whatever difficulty might exist as to the construction of the third section of the act of the 29th of January, 1795, in relation to this point, it is conceived that the rights of citizenship were clearly conferred upon the female appellee by the fourth section of the act of the 14th of April, 1802.

This act declares that the children of persons duly naturalized under any of the laws of the United States, being under the age of 21 years at the time of their parent's being so naturalized, shall, if dwelling in the United States, be considered as citizens of the United States. This is precisely the case of Mrs. Gordon. Her father was duly naturalized, at which time she was an infant; but she came to the United States before the year 1802, and was at the time when this law passed, dwelling within the United States.

It is, therefore, the unanimous opinion of the court that, at the time of the death of James Currie, Mrs. Gordon was entitled to all the right and privilege of a citizen; and therefore that there is no error in the decree of the circuit court for the district of Virginia, which is *to be affirmed with costs.*