PARKER, J.,
delivered the opinion of the court. The first question is, whether Shultice and Hillyard were citizens of Virginia, within the meaning of the statute concerning juries, 1 Rev. Code, ch. 75, $ 1, p. 264, and competent to serve as members of the grand jury which found the presentment?
Shultice was a native of Germany, and the question as to him involves a previous question whether he is a duly naturalized citizen of the U. States according to the provisions of the act of congress of the 14th April 1802, to establish a uniform rule of naturalization? 3 Bior. ch. 288, p. 475. The record of his naturalization is set out in the replication to the first plea in abatement, and the facts are admitted by the defendant’s demurrer. In determining the validity of the certificates of his naturalization, too much laxity in the construction of the statute of the U. States, might do away the conditions, on which alone an alien is permitted to claim citizenship, or the courts have jurisdiction to grant it. On the other hand, too much strictness might expose to mischiefs, the most cruel and unjust, the unfortunate alien, who, after having faithfully complied with all the terms of the act of congress, and obtained his certificate of naturalization, and having upon the faith of that certificate acquired property and. subjected himself to all the liabilities of citizenship, might, nevertheless, be deprived of all his privileges on account of some immaterial omission or inadvertence in entering the proceedings of his naturalization. There seems to be no., reason why every reasonable intendment of construction should not be applied to-give effect to a record of naturalization, that would be allowed to sustain a. record *in ordinary cases. When, therefore, the record states that Shultice had taken the oath in such case required by the act of congress, the court may well supply the oath, by intendment, in the very words prescribed by the act, and with the same effect, as if the record had particularly set forth the oath — that he swore to-support the constitution of the U. States, and that he did absolutely and entirely renounce and abjure all allegiance and fidelity to every foreign prince &c. and to the prince particularly by name, of whom he was before a subject. For, unless such an-oath had been taken, the record, which we ought to presume to be true, could not have stated, that the alien had taken the oath in *279 such case required by the act of congress.
In the case of Campbell v. Gordon, 6 Cranch 176, the record wholly omitted to mention, that it appeared to the satisfaction of the court, that, during the two years preceding the application for naturalization, the alien had behaved as a man of good moral character, attached to the constitution of the U. States, and well disposed to the good order and happiness of the same; notwithstanding which omission, the validity of the proceedings was sustained, the court being of opinion, that the tribunal which gave the certificate, must have been satisfied as to the character of the applicant, or otherwise a certificate that the oath required by law had been taken would not have been granted. Upon principle we do not see why the judgment of naturalization may not receive the same indulgence in this case, that was allowed in that, and may not be regarded as equally valid.
If there be any other error in the record of naturalization, it must be dragged from behind that judgment in some previous stage of the proceedings. In the case of Spratt v. Spratt, 4 Peters 393, it was decided, that the court could not look behind the judgment, and inquire on what testimony it was pronounced. Nor does this court think that it would be warranted in looking behind the judgment in this case, for any irregularity in the previous proceedings, unless that irregularity were such as plainly to shew that the terms of the act of congress had been violated, and those conditions ^disregarded, upon which only the alien could claim, or the court be empowered, to grant naturalization. In the record of the declaration which was made by Shultice, it is not stated that the declaration was made on oath, or that it included the renunciation of allegiance to all foreign princes &c. and particularly to him, by name, to whom Shultice had before been subject. The record does not shew, positively, any matter which contravened the act of congress: it only omits to shew certain matters involved in the declaration, which are required by that act. In the case of Stark v. Chesapeake Ins. Co., 7 Cranch 420, the record omitted altogether to shew, that there had been any previous declaration of the alien, or that he came within certain exemptions that dispensed with the declaration. It would seem essential to the case, either that there should have been a declaration, or the reason stated which dispensed with it under the law. It is true there was filed in that case, an affidavit of a witness, which, if it had been stated as a part of the proceedings, might have made the record complete: but that affidavit was no where referred to or recognized in the proceedings of the court; and it was therefore supposed, that there was a fatal error in the omission upon the record of an essential matter in the case. The supreme court, however, decided, that the naturalization was valid.
In the present case, this court is of opinion. that it is not reasonable, upon the face of these proceedings, in a court whose entries are usually short minutes only of what is transacted, to suppose, that a declaration, designed to have been made in compliance with the act of congress, was made otherwise than in the mode prescribed by that act for such declaration, including as a part of it the required renunciation. Whatever benefits under the 2nd section of the act of the 26th March 1804, 3 Bior. 614, the widow and children of the alien might have lost, by reason of the irregularity of this entry, in case the alien had afterwards died before he was actually naturalized, it does not seem reasonable that that irregularity should have the effect to invalidate the judgment of citizenship which was afterwards pronounced, *when the intention to become a citizen was in due time consummated; when the very act was done, which the declaration served to announce only the alien’s intention of after-wards doing. The oath of renunciation of foreign allegiance, could not have carried with it higher sanctions, because it had before been taken; and all the obligations which it imposed, were the same whether taken at the one time or the other. But the court must intend, that that oath formed a part as well of the declaration which was made by the alien before the hustings court of Uredericlcsburg in 1810, as of the proceedings when he was admitted to citizenship in the county court'of Spotsylvania in June 1814. This court therefore decides, that Shultice was, by virtue of the proceedings set forth in the replication of the commonwealth’s attorney, a duly naturalized citizen of the U. States, and that he was not wanting in that quality of citizenship, so far as that was required to constitute him a citizen of Virginia.
In the case of a naturalized alien, as welt as in the case of an individual born out of this commonwealth in some other of the U. States, the privileges and immunities of citizenship, implied in naturalization, and expressly declared in the constitution, must be complete under the federal laws, — without requiring any aid, or admitting the interference, of any state law. If Virginia could superadd to the naturalization laws of congress any requisitions before the alien would be relieved from the incapacities of alienage, and acquire the privileges and immunities of citizenship in the several states, then the constitution has failed, notwithstanding its plain expressions, to give to congress the power to establish an uniform rule of naturalization. The authority of the rule, as well as its uniformity, may be disturbed lay any provisions which the states may think proper to superadd, and thus the purposes of the constitution be defeated. Of what avail would naturalization be to the alien, if, notwithstanding his certificate of citizenship under the act of congress, he could claim, by virtue of it, no citizenship in any particular state, but in compliance with requisitions which *that state might superadd — if he must still solicit from state authority permission to give a local habitation to a right, merely abstract and indefinite, which had been derived from the authority of the U. States? If that were so, instead of being admitted, as the act of congress purports, and as the constitution must have designed, I to become a citizen of the U. States or any *280 of them, he would, notwithstanding his naturalization as a citizen of all the U. States, in fact be a citizen of none of them. So, in regard to an individual born within the U. States, out of the commonwealth of Virginia, of what avail is it that the constitution declares, that the citizens of each state shall be entitled to all privileges and immunities of citizens of the several states, if citizenship out of his native state, within the jurisdiction of another, must depend on some act of recognition or permission of the latter to make it effectual and complete? It is obvious, that the privileges and immunities of the naturalized citizen and of the citizen of each state, are exactly the same, under the constitution of the U. S. art. 4, § 2, and the naturalized citizen, and the native citizen of North Carolina, would be both equally entitled to them, whatever they are, in the state of Virginia. . What may be the precise extent of the privileges and immunities of citizenship secured by this article of the constitution, and how and in what cases the state authority may discriminate, in certain respects, between citizens born within the limits of the state, and such as are born without it, it is unnecessary at this time to decide.
It seems very clear, that an individual permanently residing in Virginia and domiciled here, and who is entitled to all privileges and immunities of citizens of this state, cannot be regarded otherwise than as a citizen of the state. Surely, he can in no sense be viewed as an alien, and must necessarily fall into that other class into which the law divides the people of the state, in contradistinction to aliens, — citizens, naturally or legally, who possess every right of citizenship in its fullest degree, except such as may by law be expressly taken away from any of them. Shultice and *Hillyard were, therefore, both of them citizens within the terms of the act relating to grand juries. This judgment is in conformity with the practice of the country, since the first adoption of the constitution, and the passage of the naturalization law; and a contrary judgment' could not fail to be attended with consequences the most mischievous and destructive to the repose of society.
Upon the first question adjourned, the court is of opinion, that judgment should be entered overruling the demurrer, and sustaining the replications.
As to the other question, the grand jury, in their presentment of the assault and battery charged against the defendant, has set forth the offence with all the particularity and formality of an indictment. The presentment was subscribed by the foreman of the grand jury, with the name of the individual who was the prosecutor written at the foot, though it was not indorsed ‘ ‘a true bill” under the signature of the foreman, nor was it signed by the commonwealth’s attorney. The process awarded was to answer the presentment. No leave was asked or granted to file an information; but, dispensing with such proceeding, the prosecution was carried on upon the presentment. The second question adjourned to this court propounds for consideration, whether this practice be regular? And this court is of opinion that it is.
Which was ordered to be certified &c.