Young v. Peck.

---

YOUNG *vs.* PECK.

In an action of ejectment for the recovery of lands, *alienage* of the plaintiff cannot be alleged as a bar to a recovery, although he was born in Scotland in 1769, and remained an inhabitant there until 1830, where it is shown that the *father* of such plaintiff was a resident of this country previous to and at the time of the *declaration of independence*, and remained here until his death, in 1829.

ERROR from the superior court of the city of New York. This was an action of *ejectment*, brought by the plaintiff (Mary Young) for the recovery of an undivided moiety of a house and lot in the city of New York, whereof her father *James Knox*, died seised in 1823. *James Knox* came to

this country from *Scotland,* in 1774, leaving the plaintiff in Scotland, with his grandfather, his wife having previously died. He remained in this country from his first arrival until his death. The plaintiff was born in 1769 ; was married in Scotland, to *George Young,* probably previous to her coming of age. Her husband died about 1825 ; in 1830 she came to this country; and in 1834 commenced this suit. The property in question is held by the defendant as a tenant of the grandchildren of her father, by a second marriage, the children of a deceased son, the only child of the second marriage who survived his father. Besides the above evidence of *citizenship* of James Knox, it was admitted on the trial that he was a citizen of the United States prior to the year 1802, and so continued until his death. The court decided that the plaintiff was an *alien* at the time of the descent cast, and consequently was not entitled to recover. The plaintiff excepted and sued out a writ of error.

*J. Anthon,* for the plaintiff in error.

*E. T. Payne & H Maxwell,* for the defendant in error.

*By the Court,* NELSON, Ch. J. · The case turns upon the construction to be given to the fourth section of the act of congress, passed April 14, 1802, which provides, " that the children of persons duly naturalized under any of the laws of the United States, or who previous to the passing of any law on that subject by the government of the United States may have become citizens of any one of the said states, under the laws thereof, being under the age of twenty-one years at the time of their parents being so naturalized, or admitted to the rights of citizenship, if dwelling in the United States, be considered as citizens of the United States ; *and the children of persons who now are, or have been citizens of the United States, shall, though born out of the limits and jurisdiction of the United States, be considered as citizens of the United States."*

The father of the plaintiff (James Knox) arrived here before the declaration of independence, and adhered to this

country ; he was an original citizen, and is to be considered the same as native born. The plaintiff, therefore, comes within the literal terms of the last clause of the above section. She is the child of a person who was a citizen of the United States when the act of 1802 passed, and though born abroad, is *to be deemed a citizen* within its words.

It is, however, contended that by the true construction of the clause in question, the rights of citizenship are conferred only upon children whose parent or parents *were citizens at the time of their birth ;* in other words that it applies only to the children of citizens born abroad after the parents became citizens of the United States. The act of 25 Edw. 3, which is said to have been passed to remove doubts as to the rule of the common law on the subject, required in terms, that the parents should be native born *at the time of the birth of the children.* The 7 Anne, ch. 5, was more general ; but the 4 Geo. 2, ch. 12, explanatory of it restored the qualification. 2 Barn. & Cress. 779. Now if congress, while enacting a law upon the same general subject, and as we may presume, with these several acts of parliament before them, had intended a corresponding restriction of *citizenship of parents at the birth of the children,* it is remarkable that they should have omitted the use of words to be found therein distinctly expressing such an intent. The very omission affords some ground for distrusting the construction insisted upon. Besides, no distinction of the kind is to be found in the previous clause respecting children born abroad of naturalized parents. Those born before the act of naturalization, being under age at the time, are within the privilege, if residents on the 14th April, 1802, when the statute passed. *Campbell* v. *Jordan and wife,* 6 Cranch, 176. Thus, the children of *aliens,* no matter where born out of the United States, are made citizens by the act of naturalization of their parents ; and this too, whether it took place under the laws of congress, or previously under the law of any state ; with the qualification only of age and residence. Including those persons specially admitted to citizenship by the states before the adoption of the constitution, the class born and who may have re-

mained abroad down to 1802, virtually naturalized by that statute, must have been very large; perhaps as large as the class under the other clause, with the liberal interpretation we propose to give it; the several states having begun to admit citizens soon after their governments were organized.

The clause under consideration was intended to apply to the children of persons who were native born citizens; or, of persons who were here before the declaration of independence, and participated in its establishment; they constituted, therefore, the most meritorious class of citizens whose offspring were entitled to the liberal indulgence of the government; hence the very general terms used in contrast with the previous clause, and the omission of the restriction as to age and residence. It would have been an unnatural, as well as unjust discrimination, to have debarred those children of the privilege whose birth may have happened before our independence, or while their parents were in the act of achieving it; their claims upon the country, and to a participation in the property and affection of their parents, were as strong as those born after, and it must be conceded that *they* become citizens, and are entitled to inherit in whatever country they might be found.    17 Pick. 70.    5 Barn. & Cress. 771.    2 Kent's Comm. 52, 53.

It is further urged, that the act of 1802 requires both *father* and *mother* to be citizens, in imitation of the 25 Edw. 3.    The 4 Geo. 2, only requires the *father* to be a native born subject.  " Children of persons," are the terms used in both clauses of the section, and do not necessarily embrace both parents.    Taken distributively, they may well mean the children of any and every person *duly naturalized,* &c. or as in the second clause, *who now are, or have been citizens,* &c.    I admit this view would carry the provision beyond what was probably the meaning of congress; as it would, in effect, naturalize the children born abroad, if either father or mother were citizens.    The 25 Edw. 3, provided that the children, &c. whose *father and mother* should be of the faith and allegiance of the king, &c. be deemed natural born subjects.    Under the construction of this act, its benefits were extended to children born abroad, though

Young v. Peck.

the *father* only was native born.  Cro. Car. 601.  Bacon's Abr. tit. Alien, 126.  Viner's Abr. tit. Alien, *a* 2, pl. 21, and note.  It is true, this construction, was questioned in *Doe, ex dem. Duroure,* v. *Jones,* 4 T. R. 300, but it seems to have been the prevailing exposition of the statute while in force, and the judges there regarded the subsequent act of 4 Geo. 2, which restricted the requisite parentage to the father, as a parliamentary exposition of the prior statutes.  This view, at least, weakens the argument urged upon us, that the act of congress should be constructed to include both *father* and *mother,* in imitation of the 25 Edw. 3.

It is worthy of remark, also, that after the act of 1804, amending the naturalization laws, it would be difficult to maintain that both *father* and *mother* should be naturalized within the meaning of the first clause of the fourth section. That act declared, that if any alien who should have complied with the preliminary steps made requisite by the act of 1802, and died before he became actually naturalized, his *widow* and *children* should be deemed citizens.  This very clearly shows that the naturalization of the *father* is the efficient cause of conferring the right upon the *children ;* and will satisfy the first clause of the fourth section ; and it seems naturally and reasonably to follow, that *his* citizenship is sufficient within the other.  In confirmation of the correctness of this view, I may refer to the case of *Charles* v. *Monson and Brimfield Manufacturing Co.* 17 Pick. 70, which from the pleadings and facts must have involved the very point now under consideration.  It was there assumed by the court that the *citizenship* of the *father,* brought the daughter, born in Canada, within the benefit of the act. And in *Campbell* v. *Gordon and wife,* 6 Cranch, 176, the *naturalization* of the *father* conferred the right upon his daughter, born in Scotland.

This conclusion dispenses with the other questions discussed in the case ; for if the plaintiff is brought within the second clause of the fourth section, she is to be deemed a citizen to all intents and purposes, the same as if she had been born and continued to reside in this country.  There is no limitation of age or residence annexed; nor any other

that can affect her.   The privilege of citizenship conferred is absolute and unconditional.

Judgment reversed ; *venire de novo ;* costs to abide the event.