The State ex rel. Carey v. Andriano.

---

THE STATE *ex rel.* CAREY V. ANDRIANO, *Appellant.*

Naturalization : ACT OF CONGRESS OF 1802 : CHILDREN UNDER TWENTY-ONE YEARS OF PARENTS DULY NATURALIZED, ETC. Section 4, of the act of congress to establish a uniform rule of naturalization, approved April 14, 1802 (2 U. S. Stat., p. 154), provides " that the children of persons duly naturalized under any of the laws of the United States, or who, previous to the passing of any law on that subject by the government of the United States, may have become citizens of any one of the said states, under the laws thereof, being under the age of twenty-one years at the time of their parents being so naturalized or admitted to the rights of citizenship shall, if dwelling in the United States, be considered as citizens of the United States." *Held*, that said section 4 operated prospectively, being intended to embrace children of those who should thereafter be, as well as of those who had already been, duly naturalized under any of the laws of the United States, and under said naturalization act of 1802, the infant children of aliens, though born out of the United States, if dwelling within the United States at the time of the naturalization of their parents, become citizens by such naturalization.

*Appeal from Buchanan Circuit Court.*—HON. O. M. SPENCER, Judge.

REVERSED.

The State ex rel. Carey v. Andriano.

*Ramey & Brown* and *Green & Burnes* for appellant.

(1) The father of appellant having been duly naturalized in 1854, and his mother having been naturalized by the operation of section 2 of the act of congress approved February 10, 1855 (10 U. S. Stat. at Large, 604) and the appellant having been under the age of twenty-one years, and having then, and ever since, resided in the United States, he is a citizen of the United States, by virtue of the provisions of section 2172, page 382, of the Revised Statutes of the United States. (2) By the enactment of the section of the Revised Statutes above cited, all previous laws embracing the same subject were repealed, and from and after the date of its enactment that section was "in force in lieu thereof." R. S. U. S., sec. 5596, p. 1091. (3) The section cited is the legislative declaration of the law on the first day of December, 1873. The acts from which it may have been taken ceased to exist as of that day, and the revision became the law in its stead. If the language of the revision, standing by itself, is plain, the courts cannot look at the original statutes to see if congress has erred in the revision. This can only be done to construe doubtful language. *United States v. Bowen*, 100 U. S. 508 ; *Victor v. Arthur*, 104 U. S. 498 ; *Arthur v. Dodge*, 101 U. S. 34–36 ; *United States v. Sixty-five Terra Cotta Vases*, 18 Fed. Rep. 508. (4) But had the Revised Statutes never been enacted the appellant would still be a citizen of the United States by virtue of the provisions of section 4, of the act of April 14, 1802 ( 2 U. S. Stat. at Large, 154). That act applies as well to minors who came to the United States after its passage, as to those who resided here at that date. *United States v. Kellar*, 13 Fed. Rep. 82 ; *West v. West*, 8 Paige Ch. 433 ; *State v. Penny*, 10 Ark. 621 ; *O'Connor v. State*, 9 Fla. 215 ; *North Noonday, M. C. v. Orient M. C.*, 6 Saw. 304 ;

*United States v. Hirschford,* 13 Blatch. 330; *Opinion Attorney General,* 10 Opin. Att'y-Gen. 329; 2 Kent's Com. 51, 52. (5) As bearing upon the interpretation of the act of April 14, 1802, the appellant cites, *Claflin v. Insurance Co.,* 110 U. S. 81; *Thornley v. United States,* 113 U. S. 310; *McDonald v. Hovey,* 110 U. S. 619; *Ludlam v. Ludlam,* 26 N. Y. 356; Vattel's Law of Nations, bk. I., ch. 19, sec. 215; *Young v. Peck,* 21 Wend. 388; *Peck v. Young,* 26 Wend. 613; 2 Am. Law Reg. [O. S.] 1934

*B. J. Woodson, R. S. Musser, B. R. Vineyard* and *J. P. Grubb* for respondent.

(1) The first clause of the fourth section of the act of congress of April 14, 1802 (2 U. S. Stat. at Large, 155), did not have the effect to naturalize appellant, without any act on his part, by the naturalization of his father. *Campbell v. Gordon,* 6 Cranch, 176; *Vint v. Heirs of King,* 2 Am. Law Reg. [O. S.] 712, 720; *Peck v. Young,* 26 Wend. 622-3-4; *Young v. Peck,* 21 Wend. 388. (2) By the revision of this clause, as carried into the Revised Statutes of the United States in section 2172, there was a slight change in the phraseology from the old law, but the sense and meaning remained the same, as construed in *Campbell v. Gordon, supra.* Neither a change of phraseology, nor the omission or the addition of words in a revised statute, will be held to work a change of the original statute, unless it clearly appears that such was the intention of the legislature. *Taylor v. Delaney,* 2 Caine's Cases, 151; *Yeates Case,* 4 Johns. 359; *In re Brown,* 21 Wend. 316; *Conger v. Barker's Adm'r,* 11 Ohio St. 13; *Overfield v. Sutton,* 1 Metc. [Ky.] 624; *McDonald v. Hovey,* 110 U. S. 618; *Douglass v. Howland,* 24 Wend. 47; *Burnham v. Stephens,* 33 Ala. 247; *Ash v. Ash,* 9 Ohio St. 387; *Croswell v. Crane,* 7 Barb. 191; *Ennis v. Crump,* 6 Tex. 34; *Hughes v. Farrar,* 45 Me. 72; *Goodell v. Jackson,* 20 Johns. 722; 17 Mo.

App. 115, 116 ; *Theriat v. Hart*, 2 Hill, 380 ; *Mooers v. Bunker*, 29 N. H. 421 ; *Wright v. Oakley*, 5 Metc. [ 46 Mass.] 406, 407. (3) Congress, in revising the statutes, must be presumed to have known the judicial construction which had been placed on this clause of the act of 1802, by the Supreme Court of the United States ; and the bringing it into the revision, in substantially the same form as in the original act, was a legislative adoption of its known judicial construction. *Durasmus v. Harrison*, 26 Ala. 326 ; *McDonald v. Hovey*, 110 U. S. 628, 629. (4) A statute adopted into a revision in the language of, or in language having the same meaning as the original statute, will not be construed as a new enactment, but as a continuance of the original law. *State ex rel. v. Heidorn*, 74 Mo. 411 ; *City of Cape Girardeau v. Riley*, 52 Mo. 424 ; *St. Louis v. Alexander*, 23 Mo. 309. (5) And such a statute in the revision speaks not from the date of the revision, but from the date of the taking effect of the original act. *Bishop v. Schneider*, 46 Mo. 472 ; *City of St. Louis v. Alexander*, 23 Mo. 509 ; 20 W. Va. 132. (6) And this is so, where, in the revision, as in section 5596 of the Revised Statutes of the United States, the prior statutes embodied therein are repealed simultaneously with the taking effect of the revised laws. *Wright v. Oakley*, 5 Metc. [46 Mass]. 406 ; *Fullerton v. Spring*, 3 Wis. 667 ; *Cramer v. City of Milwaukee*, 18 Wis. 257 ; *Hurly v. Town of Texas*, 20 Wis. 634 ; *Laude v. Railroad*, 33 Wis. 640 ; *Glentz v. The State*, 38 Wis. 549, 554 ; *Schettels v. Tabert*, 46 Wis. 446 ; 24 Wall. 458, 459. (7) Section 5597 of the Revised Statutes of the United States preserves unimpaired all the rights existing at the date of the taking effect of the revision, which had accrued under the original statutes ; among these were the rights of citizenship and alienage, which were not intended to be affected. The national status of the individual, being a personal right, congress did not intend or attempt to

change it without consulting the individual. "It will not be inferred that the legislature, in revising and consolidating the laws, intended to change their policy, unless such intention be clearly expressed." *United States v. Ryder*, 110 U. S. 740 at top; *McDonald v. Hovey*, 110 U. S. 628.

NORTON, C. J.—This is a proceeding by *quo warranto*, instituted in the circuit court of Buchanan county, challenging the right of defendant, Andriano, to exercise the functions, and perform the duties, of sheriff of Buchanan county. The circuit court sustained the challenge, and rendered its judgment of ouster, on the sole ground that defendant was not and never had been a citizen of the United States, and was, therefore, under our constitution, disqualified from holding the office of sheriff. From this judgment defendant appealed.

The record before us discloses the following undisputed facts, viz: that at the general election held in Buchanan county in 1886, defendant was, by a majority of votes cast at said election, elected sheriff of said county; that he was duly commissioned, gave the required statutory bond, took the requisite oath of office, and on the 23d of November, 1886, entered upon the discharge of the duties of the office. It further appears that defendant was born in the foreign country of Baden in the year 1841, while his parents were citizens of, and residing in, that country; that in 1849 his parents removed to the United States, bringing with them defendant, then an infant about eight years old, and that they resided in said Buchanan county from that time till their respective deaths, which did not occur till long after 1855; that the father of defendant was duly naturalized in 1854 in the circuit court of Buchanan county, and that defendant has also resided in said county ever since 1849.

Defendant's claim to citizenship is based on the facts above stated, and the question as to whether or not it is

well founded is to be determined by a construction of the fourth section of an act of congress approved on the fourteenth of April, 1802, entitled "An act to establish an uniform rule of naturalization," etc. 2 U. S. Statutes, 154. So much of said section as has a bearing on the question before us is as follows:

"Section 4. And be it further enacted, that the children of persons duly naturalized under any of the laws of the United States, or who, previous to the passing of any law on that subject by the government of the United States, may have become citizens of any one of the said states, under the laws thereof, being under the age of twenty-one years, at the time of their parents being so naturalized or admitted to the rights of citizenship, shall, *if dwelling in the United States*, be considered as citizens of the United States."

Considering this section with reference to its grammatical construction, and in connection with the fact that it is incorporated in an act providing an uniform rule for the naturalization of such aliens, as might thereafter desire to be naturalized as therein provided, and in connection with the previous legislation of congress on the subject, we have no hesitation in saying that it was intended to be prospective in its operation as to all aliens who might become naturalized under the provisions of the act of 1802, of which said section four is a part, together with all the incidents flowing from such naturalization to the children of aliens so naturalized, as set forth in said section, and that, giving to it such operation, the defendant, under the undisputed facts in the case, became a citizen of the United States, and was, therefore, under the constitution of this state, eligible to the office of sheriff at the time of his election.

The precise question under consideration has been adjudicated and passed upon by the highest courts of several of the states, and it has been uniformly held by them that said section four operated prospectively, and

that, under the naturalization act of 1802, the infant children of aliens, though born out of the United States, if dwelling within the United States at the time of the naturalization of their parents, became citizens by such naturalization, and that the provisions of that act on this subject are prospective, and intended to embrace the children of those who should thereafter be, as well as those who had already been, duly naturalized under any of the laws of the United States. The cases in which this is held are as follows: *State v. Penney*, 10 Ark. 621 ; *O'Connor v. State*, 9 Florida, 215 ; *West v. West*, 8 Paige Ch. 433 ; *United States v. Kellar*, 13 Fed. Rep. 82.

But while counsel for plaintiff concede that it has been so held by the state courts, it is earnestly contended by them that the Supreme Court of the United States, in the case of *Campbell v. Gordon*, 6 Cranch, 176, has placed a different construction on the section in question, and that the section being a statute of the United States we are bound to follow the construction thus put upon it. While we recognize the correctness of the proposition, that where the Supreme Court of the United States has construed an act of congress, that the state courts will adopt such construction, we do not understand the court in the case of *Campbell v. Gordon, supra*, to have construed section four of the act of 1802 so as to make it operative retrospectively only, and not prospectively ; nor was it so understood by Justice Harlan, of the Supreme Court, in the case of *United States v. Kellar, supra*, in which he uses the following language : "It was suggested that the act of 1802, from which, as we have seen, section 2172 is taken, was intended to be temporary in its operation, and to apply to cases arising previous to its passage. In support of that proposition reference was made by counsel to *Campbell v. Gordon*, 6 Cranch, 176. But the court does not perceive that that case maintains, or that the language of the act of 1802 in any

degree justifies, any such interpretation of the statute.'' It is further stated by him, in his opinion, '' that it was held in the case of *Campbell v. Gordon*, that, under the act of 1802, the naturalization of a father at the time his daughter was an infant resident of this country conferred upon her full rights of citizenship, although she had taken none of the steps required by the naturalization laws.''

While the criticism of counsel as to the inaccuracy of the statement made in the sentence last above quoted, that the daughter was an infant resident of this country, at the time her father was naturalized, is justified by the facts of that case, the fact being that the daughter, at the time of her father's naturalization, was a minor, residing in Scotland, and came to this country after he was naturalized, and before the act of 1802 was passed, and was a resident of this country at the time it passed, such inaccuracy neither impairs the force, nor demonstrates the incorrectness, of the conclusion announced in what is previously said in the opinion with reference to the proper construction of the act of 1802.

In the case of *Campbell v. Gordon, supra,* there were but two points before the court for determination. The first was as to whether the father of Mrs. Gordon had been duly naturalized under an act of congress passed in 1795, and the second was as to whether his daughter, Mrs. Gordon, who, at the time of her father's naturalization, was a minor, residing in Scotland, but who came to this country before the act of 1802 was passed, and was a resident at the time it passed, became a citizen in virtue of the naturalization of her father.

The court, after passing on the first point, and holding that the father had been duly naturalized, proceeded in its opinion as follows: ''The next question to be decided is, whether the naturalization of William Currie conferred upon his daughter the rights of a citizen, after her coming to and residing within the United States,

she having been a resident in a foreign country at the time when her father was naturalized. Whatever difficulty might exist as to the construction of the third section of the act of the twenty-ninth of January, 1795, in relation to this point, it is conceived that the rights of citizenship were clearly conferred upon the female appellee by the fourth section of the act of fourteenth of April, 1802. This act declares that the children of persons duly naturalized under any of the laws of the United States, being under the age of twenty-one years at the time of their parents being so naturalized, shall, if dwelling in the United States, be considered as citizens of the United States. This is precisely the case of Mrs. Gordon. Her father was duly naturalized, at which time she was an infant; but she came to the United States before the year 1802, and was, at the time the law passed, dwelling within the United States. It is, therefore, the unanimous opinion of the court that, at the time of the death of James Currie, Mrs. Gordon was entitled to all the right and privilege of a citizen.''

We are of the opinion that it cannot fairly be claimed that in the above case the court either held, or intended to hold, that a parent who might be duly naturalized under the act of 1802, having minor children at the time of such naturalization, residing in the United States, that such minor children did not thereby, under section four of said act, become citizens. The facts of the case before the court did not call for a ruling on such point, and we do not understand it to have been ruled upon, either in fact or as a logical result of the ruling actually made. The father of Mrs. Gordon was naturalized under the act of 1795, at a time when she was a minor, residing in Scotland, and, notwithstanding that fact, the court held that the naturalization of the father was effectual in conferring upon her the right and privilege of a citizen, the further fact appearing that she after-

wards became a resident, and was a resident of this country at the time the act of 1802 became a law.

If section 4, of the act of 1802, as held in that case, was operative in conferring the rights of a citizen upon the minor child of a parent who had been duly naturalized under the act of 1795, although, at the time of the naturalization of such parent, such child resided in a foreign country, and did not become a resident of this country till, or before, the act of 1802 became a law, we can perceive no reason why said section 4 should not be held to be operative in conferring the right of citizenship on the minor child of a father duly naturalized under the law of 1802, when such minor child, at the time of the naturalization of the father, was residing with him, and a resident of this country. We can perceive no reason why it should be operative in the one case, and not in the other. In *Campbell v. Gordon, supra,* it was held to be operative in the case first put, and we are of the opinion, and so hold, that it is likewise operative in the second case put.

For the reasons given, the judgment is reversed and defendant restored to all that he has lost thereby, and the suit is dismissed with the concurrence of the other judges.