No. 22.—JOHN MILLER, plaintiff in error, *vs.* JAMES M. REINHART, defendant in error.

[1.] A certificate of naturalization was to this effect: I, J F G, Clerk, &c. certify, that at a Superior Court held at Savannah, J M R, an alien, &c. petitioned the Court to be admitted a citizen and, having in all things complied with the law in such case made and provided, the said J M R was accordingly admitted a citizen of the U. S. having first taken and subscribed, in open Court, the oath of naturalization : *Held*, that this certificate was not sufficient to show J M R naturalized.

Appeal from Ordinary, in Montgomery Superior Court. Tried before Judge HOLT, April Term, 1855.

James M. Reinhart applied for letters of administration upon the estate of his wife, Cassa Reinhart. John Miller caveated the application. On appeal to the Superior Court, from the decision of the Ordinary, the questions in this case arose.

The applicant offered in evidence the following testimony : 1st. His letters of citizenship, to wit :

STATE OF GEORGIA, CHATHAM COUNTY :
*United States of America, in the Superior Court of Chatham County.*

To all whom these presents may come, greeting : I, John F. Guilmartin, Clerk of said Court, do hereby certify and

make known, that at a Superior Court held at Savannah, in and for the county aforesaid, before the Honorable William B. Fleming, Esq. Judge of said 'Court, on the 24th day of January, 1855, James M. Reinhart, an alien and subject of the King of Germany, petitioned the Court to be admitted a citizen, and having in all things complied with the law in such case made and provided, the said James M. Reinhart was accordingly admitted a citizen of the United States of America, having first taken and subscribed, in open Court, the oath of naturalization.

Given under my hand and seal of the said Court, this twenty-fourth day of January, in the year of our Lord, one thousand eight hundred and fifty-five, and in the seventy-ninth year of the Independence of the United States of America.

[L. S.]     JNO. F. GUILMARTIN, Clerk s. c. c. c.

To which document or certificate of the Clerk, of the fact of the naturalization of the applicant being admitted in evidence, caveator, by his Counsel, Wm. B. Gaulden and DeLaMotta Sheftall, objected, on the ground that if said applicant had ever been legally made a citizen and naturalized, the evidence was matter of record; and that the exemplification of that record, at least the judgment of the Court, should have been introduced, and was higher and better evidence than a mere notarial certificate of the Clerk.   The Court overruled the objection and admitted the testimony, and Counsel for caveator excepted.

2d.   Counsel for applicant then introduced in evidence the original license of marriage between the applicant and his wife, Cassa; proved the marriage by a witness who saw them married; which fact of marriage was admitted, and took place in Laurens County, 6th February, 1853; proved that Cassa, the wife of the applicant, on whose estate he applied for letters of administration, was dead; that she had an only child, who died before she did; that her father died before she did, possessed of a considerable personal and real estate, leaving five children besides the wife of the applicant.   It was fur--

ther proved by John M. Reinhart, that the applicant was a native of Bavaria, in Germany, but had resided in the State of Georgia for the last 14 or 15 years; and had resided in Laurens County for the last number of years, say 7 years, and was a resident of this State, and Laurens County, at the time of his inter-marriage with Cassa Miller, his wife, and is now. It was further proved, by Malcomb Curry, that the father of intestate was dead, and died intestate before Cassa Reinhart, the wife of applicant, leaving a considerable personal and real estate; that Cassa, the wife of applicant, died intestate; that she had no other property of her own, either in possession or expectancy, than that mentioned in a certain deed of convey-ance, (which conveyance was afterwards rejected by the Court,) and what might be due her as one of the distributees of her father's estate; that caveator was the brother and and next of kin of deceased. It was proved that Cassa had jewelry and clothes at her death, and her right, whatever it may have been, in her father's estate. It was also proved by Farquhard McRae, Deputy Ordinary of Montgomery County, that letters of administration had been granted to the caveator, John Miller, 6th of February, 1855, on the estate of John Miller, (his father,) but that the inventory and appraisement had not yet been returned. Counsel for applicant here closed.

Counsel for the caveator then opened his case to the Jury, and offered in evidence the original marriage settlement between the applicant and the said Cassa Miller, in the following words, to wit:

STATE OF GEORGIA, MONTGOMERY COUNTY:

This indenture of three parts, made and entered into this February, the fifth day, in the year of our Lord, eighteen hundred and fifty-three, between James M. Reinhart of said State and county of the first part, Cassa Miller of said State and county of the second part, and John Miller of said State and county of the third part, witnesseth, that the said James M. Reinhart of the first part, for and in consideration of mar-

riage to be had and solemnized between the said James M. Reinhart of the first part, and the said Cassa Miller of the second part, does for himself, heirs, executors and administrators covenant, grant and agree, that all the lands that may be given her, the rights, members and appurtenances to said lands, and three negroes, to wit: Georgianna, a girl about sixteen years of age; Amy, a girl about four years of age; Milly, a girl about two years of age; now in the possession of Cassa Miller, and all other property which may at any time be given said Cassa Miller by her father or other persons, by will or otherwise, shall form and remain to be her separate property and estate; and shall not, in Law or Equity, be subject to the use of James M. Reinhart, and at her death, if leaving no children, to go to her brothers and sister, and in nowise to be subject to the payment of the debts of the said James M. Reinhart, or be subject to be sold or conveyed, or in any manner controlled by him, the said James M. Reinhart; but the rights and title of said property shall be *vested* in said John Miller of the third part, for the use and benefit of said Cassa Miller; and said James M. Reinhart further covenants and agrees, that said Cassa Miller may dispose of said property by will, to any person she may appoint, subject, however, to be used by said James M. Reinhart, with the approbation and consent of said John Miller, during the continuance of the coverture, for the mutual benefit and advantage of said James M. Reinhart and Cassa Miller, and the said James M. Reinhart and Cassa Miller nominate and appoint said John Miller, trustee of said property, who is authorized to possess himself of, and control said property in conformity with this indenture; and the said John Miller consents and agrees to his said nomination and appointment of trustee as aforesaid. In testimony whereof, the parties of the first, second and third parts, have hereunto set their hands and affixed their seals, the day and year above written.

J. M. REINHART, [L. S.]
CASSA MILLER, [L. S.]
JOHN MILLER, Jun. [L. S.]

Signed, sealed and delivered in presence of

     his

 Nathaniel &#9571; Gray,

    mark

·Lewis Beacham, J. P.


      Clerk's Office, Montgomery County.

 The within agreement or contract, recorded in book P P, on folios 80 and 81, this November, 23d day, 1854.

        A. T. McLEOD, C. S. C.


 To the admission of which in evidence, the Counsel for applicant objected, upon the ground that it was irrelevant to ·the issue, because—

 1st. That it was in proof that the said Cassa Reinhart, at the time of her death, had other property in her possession, to wit: her wearing apparel, jewelry, &c. and that she was enti-·tled to her distributive share of her father's, John Miller's, estate.

 2d. That by the terms of the marriage settlement, if it be a valid and binding instrument, the *trust* created by it ceased ·at the death of the said Cassa, and the property vested, and there was no necessity for letters of administration to be granted upon her estate to John Miller, the brother and trustee, to execute and carry out the terms of said marriage settlement.

 3d. That if it should be held, that by the terms of said marriage settlement, the *trust* was not executed, but was a ·continuing and executory *trust*, letters of administration upon said Cassa's estate was not necessary to enable the said trustee to carry out and execute the terms of said *trust*.

 4th. That, as between the applicant, the husband, and John Miller, the caveator and brother of said Cassa, there was nothing in the marriage settlement to deprive the husband and applicant of his right to the administration ·on the ·estate of his wife, the said Cassa. .

5th. That the said marriage settlement embraced only the property mentioned in it, and all such as might have been *given* to the said Cassa, but did not embrace such other property as had descended, or was likely to descend to her, by inheritance, or otherwise than by *gift*.

6th. That said marriage settlement had not been recorded in Laurens County, the county of the residence of the husband, the said James M. Reinhart, at the time of his inter-marriage with the said Cassa.

Counsel for caveator, insisting upon his right to have the marriage settlement in evidence, proposed, upon its being received by the Court, to prove that what might be coming to the said Cassa as distributee of her father's estate, together with what property was mentioned in the deed of settlement, was all the property in the possession or expectancy of said Cassa, and urged the introduction of the marriage settlement in evidence, upon the ground that it, in connection with the testimony proposed, would show that applicant had relinquished all right to his wife's property after death without children, by whatever means it might have been acquired ; and that if this was shown, the applicant had no right to the administration, but that caveator had, as the right to the administration, followed the right to the property.

The Court rejected the deed of settlement as irrelevant to this issue, for the reason, that the title to the property mentioned in it, could only be settled in a Court of Law, and whether the applicant had or had not renounced his right to it, it was clear that he had not thereby renounced his wife's inheritance, or what might be coming from her father's estate, by this deed. The Court stated that it was not necessary to decide the other points arising in the case ; but if it were, the objection arising out of the interlineations would be referred to the Jury, and the recording of the deed in Montgomery County held to be a void act, it having been proved that the applicant, the husband, resided in Laurens. No other testimony was offered by the caveator, and a verdict was rendered for the applicant, under the directions and rulings of the

Court, granting the administration to him.    And Counsel for caveator excepted.

Upon these exceptions error has been assigned.

A. J. MILLER, representing Counsel for plaintiff in error.

G. J. & W. SCHLEY, for defendant in error.

*By the Court.*—BENNING, J. delivering the opinion.

[1.] The question is, was the decision admitting the certificate right ?

Proceedings of naturalization have to be recorded—" which proceedings shall be recorded by the Clerk of the Court," is the language of the Act of Congress on the subject.    (2 *Story's Laws U. S.* 851.)

The certificate does not give the words of any part of the record.    The certificate seems to be a statement of what, in the Clerk's opinion, is the legal import or effect of the different particulars of which the record may consist.

For the admission of such a certificate as evidence, the naturalization laws make no provision—none exists by the Common Law.    But it was said, that the admission of such a certificate is authorized by an Act of this State—the Act of 1830, to amend an Act to regulate the admission of evidence, &c.    That Act declares, that the certificate of any public officer, under his hand and seal of office, if one is attached thereto, in relation to any matter or thing pertaining to their respective offices, or which, by presumption of law, properly pertains thereto, shall be admitted as evidence before any Court of Law or Equity in this State, &c.    (*Pr. Dig.* 220.)

The Act of which this is amendatory, is the Act of 1817, " to regulate the admission of evidence," &c. which declares, that the certificate or attestation of any public officer, either of the State or of any county thereof, shall give sufficient validity or authenticity to any copy or transcript of any record,

document or paper of file in the respective offices under their control, to admit the same as evidence, &c. (*Ib.* 215.)

This Act is not repealed by the Act of 1830. That Act, by the title of it, is restricted to the *amending* only of this Act. The Act of 1830, therefore, was intended, it is to be presumed, to reach cases which were not reached by the Act of 1817. And it is easy to conceive that such cases may exist. For example, a record may be consumed by fire. In such a case, the Clerk cannot give a certified copy of the record, but he may give a certificate that no such record remains under his control. And this certificate would, I think, be admissible under the Act of 1830. So, a list of names officially filed in a public office, may not have on it a particular name. In such a case, the officer presiding over that office, cannot give a certified copy of that name, but he may give a certificate that no such name appears on the list. And this I think he is authorized to do by the Act of 1830.

Perhaps, too, the Act of 1830 was intended to dispense with the necessity that a transcript of the *whole* of any record or other writing must be produced, before any part can become admissible, and to confer the privilege of using a certified copy of only a part of a record or other writing.

But whatever the intention of the Act of 1830 may have been, we think that the intention was not, in the case of Clerks, to authorize them to give a statement, in brief, of what, in their opinion, may be the legal import or effect of the particulars of the record. We think that when there is a record and a judgment, the certificate, even under the Act of 1830, ought to give a *copy* of at least the judgment, or of some one or more of the other parts of which the record may consist.

And therefore, we are obliged to consider this certificate insufficient, and the decision admitting it as evidence erroneous; for this certificate gives a copy, neither of the judgment nor of any other part of the record.

And this decision is not in conflict with *Campbell vs. Gordon,* (6 *Cranch,* 176,) for in that case the Court had before it

not only the certificate of the Clerk—it had also the *minutes* of the Court.

This certificate being, as we think, not legal evidence, its admission as legal evidence makes it necessary that a new trial should be had.    Accordingly, one is granted.

As to the rejection of the marriage settlement, we merely say, that in our opinion, the existence of that settlement ought not to be allowed to deprive the husband of the right of administration.    His appointment to such administration cannot, as far as we can see, at all effect any right created by that settlement.    If this be so, the settlement, as evidence, was merely irrelevant.