CHARLES GREEN'S SON and others *v.* SALAS.

*(Circuit Court, S. D. Georgia, E. D.* June 4, 1887.)

1. ALIEN—PRESUMPTION AS TO STATUS.
   The original *status* of an alien is presumed to continue until the contrary be shown.

2. SAME—NATURALIZATION.
   The naturalization of an alien as a citizen of the United States is strictly a judicial act. The action of the court must be entered of record as its judgment, and, if valid, it is final and closes inquiry.

3. RECORDS—PROOF OF.
   In the absence of proof of the loss or destruction of a record, the record can be proved only by the record itself, or by an extract therefrom.

4. NATURALIZATION—EVIDENCE OF.
   The certificate of the clerk of the district court, reciting that the applicant has been duly admitted to citizenship, but failing to show or verify any extract from the record, or minute of the action of the court, is not competent evidence to show naturalization.

5. SAME—RECORD OF PROCEEDINGS.
   The act of congress, April 14, 1802, (2 St. at Large 154,) expressly requires the record of proceedings for naturalization to be recorded; and the rule that the record of the action of the court, in passing on the application, must be produced or accounted for, has not been departed from in a decided case.

6. RECORD—PRESUMPTIONS.
   Where a court recites its own proceedings, unerring verity is attributed by the law to the record.

7. SAME—DEFECTIVE RECORD.
   The record, if not correctly made up, or if lost or destroyed, should be perfected or replaced by appropriate proceedings in the court where the judgment was pronounced.

8. NATURALIZATION—PAROL PROOF.
   Naturalization cannot be proved by parol.

9. SAME—EXPATRIATION.
   In this country expatriation is a fundamental right. The domicile of birth easily reverts, and a very short residence, with the intention to regain the original domicile, is sufficient. A native of a foreign government may reas-

sume his original citizenship, under such conditions as the government of his birth may require. The fact of expatriation is to be proved by any fact that will convince the judgment.

10. SAME—ORDER OF FOREIGN GOVERNMENT.

The authenticity of his order being admitted, the courts of the United States must presume that the Captain General and Governor of Cuba, possessing a high executive and superintending control, acted on this occasion with legitimate authority, and that he had sufficient evidence to satisfy him of Spanish domicile; and the defendant, having asserted such domicile before the Spanish authorities, will not now be heard to deny it.

11. SAME—FOREIGN NATURALIZATION THROUGH FRAUD.

A court of the United States will not recognize, as a citizen of this government, one foreign born, who deliberately renounces his citizenship here, and who places himself under the dominion of another government, and who for 18 years has held himself out to all men as an alien, even though he may have imposed on the other government to obtain anew his citizenship there.

(*Syllabus by the Court.*)

*Charlton & Mackall* and *Chisholm & Erwin*, for complainants.

*Denmark & Adams, George A. Mercer*, and *S. Yates Levy*, for defendant.

SPEER, J. A plea to the jurisdiction has been filed, averring that Ramon Salas, the defendant, is not, as alleged in the bill, a Spanish subject, and an alien, but that he is a citizen of the United States of America, and of the state of Georgia, where the complainants also reside. The complainants took issue with the averments of the plea, and both parties have been fully heard.

Premising that it is admitted that the defendant, Salas, is an alien by birth, and a subject of Spain, his original *status* is presumed to continue until the contrary be shown. *Hauenstein* v. *Lynham*, 100 U. S. 483. The *first* inquiry is, was Ramon Salas in fact "admitted to become" a citizen of the United States in the manner prescribed by law, and has he furnished competent and sufficient proof of his naturalization? *Secondly*, if his naturalization as an American citizen has been effected legally, has he since then expatriated himself as an American citizen, and "redintegrated" himself as a Spanish subject?

It may be considered as settled that the naturalization of an alien, as a citizen of the United States, is a judicial act, and it follows that, to be effective, it must be done by a court of competent jurisdiction. Chief Justice MARSHALL in *Spratt* v. *Spratt*, 4 Pet. 406, states the principle in this language:

"The various acts upon the subject submit the decision on the rights of aliens to admission as citizens to courts of record; they are to receive testimony, compare it with the law, and to judge on both law and fact. This judgment is entered on record as the judgment of the court,—it seems to us, if it be in legal form, to close all inquiry; and, like every other judgment, to be complete evidence of its own validity."

See, also, *In re Coleman*, 15 Blatchf. 420.

The courts of New York have had ample experience with questions of naturalization, and *In re an Alien*, 7 Hill, 137, a supreme court of that state announces:

"The application must be supported by legal proof of the facts on which it rests. The proceedings are strictly judicial. The alien who applies for ad-

mission asserts a compliance on his part with the prescribed conditions, and he must furnish the requisite proof of what he so alleges, or he establishes no right."

*The Acorn*, 2 Abb. 444.

Of naturalization, then, there must be, as in other judicial matters, that judgment which is "the end of the law," which Mr. Justice Blackstone declares is "the decision or sentence of the law announced by a court, or other competent tribunal, upon the matter contained in the record," (3 Bl. Comm. 395;) and which my Lord Coke pronounces the "very voyce of law and right." Now, how is this judgment shown? In the nature of things, it must be a matter of record.

A court speaks by its dockets, minutes, or records. Where there is no record there is no judgment. *Plant* v. *Gunn*, 2 Woods, 378.

The defendant, to show his admission to citizenship, relies upon the certificate of the clerk of the district court of South Carolina, which is as follows:

"THE UNITED STATES OF AMERICA, SOUTH CAROLINA DISTRICT.

"*To all Whom these Presents may Come, Greeting:* Whereas at a federal district court, held at Charleston, under the jurisdiction of the United States of America, on the fourteenth day of January, *Anno Domini* one thousand eight hundred and fifty-seven, and the eighty-first year of the sovereignty and independence of the said states, Ramon Salas, late of Sabadell, Spain, aged thirty-six years, came into the said court, and made application to be made a citizen of these our said states; and having complied with all the conditions and requisites of the acts of congress in such case made and provided, for establishing a uniform mode of naturalization; and the oath to support the constitution of the United States of America, and to renounce all allegiance and fidelity to every foreign prince, potentate, state, or sovereignty whatever, being administered unto him in open court before the Honorable A. G. MAGRATH, U. S. judge of said district,—the said Ramon Salas is by virtue thereof, and the premises, declared and enrolled a citizen of the said states.

"In testimony whereof I have affixed the seal of the said court to these presents, at Charleston, in the district aforesaid, on the day and year above written.                    H. Y. GRAY, U. S. Dist. Clerk, S. C. D.

"*January* 14, 1857."

Also on a book purporting to be a register of the names of aliens admitted to citizenship by the "federal courts" in South Carolina, on which the applicant's name appears. This was called "The Book of Aliens." The minutes of the court were placed in evidence, and from them it appears that the district court of the United States for the district of South Carolina was not in session on the fourteenth day of January, 1857, the date of the alleged admission of Mr. Salas. There is no application, oath, or other record relating to this transaction; but the defendant testifies, subject to objection to evidence by parol, that he took an oath or oaths, how many he does not remember, or before whom taken. From the minutes, it appears that it was the practice of the district court of South Carolina, in cases of admission to citizenship, to pass an order, which was recorded by the clerk. The "Book of Aliens" contained names of aliens admitted in the federal courts; in the state courts; under

treaties; and also a class of persons who were admitted as denizens. It does not appear to be a naturalization docket of the district court.

It is a matter of interest and importance to determine whether these records, if they are entitled to that designation, have such weight as evidence that it will be fairly inferable from them that there was judicial action upon this application for citizenship. In other words, was there a judgment admitting Ramon Salas to American citizenship? In the absence of proof of the loss or destruction of a record,—and there is no pertinent proof on that subject here,—the method of proving the record is by the production of the record itself, or an extract from it. The certificate of the clerk in evidence is neither such record, nor such extract. It is a recital of what the clerk thinks has been done. Now, the verity and importance which is attributable to the certificate of the clerk is not because he is the clerk, but because he has access to the records, is their custodian, and is presumed to faithfully transcribe and to truly certify extracts therefrom.

The case of *Miller* v. *Reinhart*, 18 Ga. 239, is precisely in point. This was a question of naturalization, where the certificate was:

"STATE OF GEORGIA, CHATHAM COUNTY, UNITED STATES OF AMERICA.

"*In the Superior Court of Chatham County.*

"*To all Whom these Presents may Come, Greeting:* I, John F. Guilmartin, clerk of said court, do hereby certify and make known that at a superior court held at Savannah, in and for the county aforesaid, before the Honorable WILLIAM B. FLEMING, Esq., judge of said court, on the twenty-fourth day of January, 1855, James M. Reinhart, an alien and subject of the king of Germany, petitioned the court to be admitted a citizen; and having in all things complied with the law in such case made and provided, the said James M. Reinhart was accordingly admitted a citizen of the United States of America, having first taken and subscribed in open court the oath of naturalization.

"Given under my hand and seal, etc.     J. F. GUILMARTIN, Clerk."

The court held that this certificate was not sufficient to show that James M. Reinhart was naturalized. The reasoning of Judge BENNING, who delivered the opinion, seems unanswerable. "Proceedings of naturalization have to be recorded,—'which proceedings shall be recorded by the clerk of the court,' is the language of the act of congress on the subject. 2 Story, Laws U. S. 851. This certificate does not give the words of any part of the record. The certificate seems to be a statement of what, in the clerk's opinion, is the legal import or effect of the different particulars of which the record may consist. We are obliged to consider this certificate insufficient, and the decision admitting it erroneous; for this certificate gives a copy neither of the judgment, nor of any other part of the record." In *Lansing* v. *Russell*, 3 Barb. Ch. 325, the court of chancery of New York holds that "the certificate of the clerk of a court is not evidence of the existence of a judgment, except in those cases where it is made evidence by statute; and, independent of any statutory provision, the proper way to prove the existence of a judgment is by the production of the record itself, or of an exemplification thereof, or of a sworn copy of such record."

It does not appear that there is any statutory provision authorizing such a certificate as this as evidence of naturalization. In section second of the act of congress to establish a uniform rule of naturalization, which became the law April 14, 1802, (2 St. at Large, 154,) a certificate of the applicant's registry and report for naturalization is provided for, but this certificate was simply to be exhibited as evidence to the court to which the subsequent application for naturalization was to be presented. This act, in section first, also requires, not only that the clerk shall record all proceedings of the application for naturalization, but also that the preliminary report and registry shall be recorded. The record was therefore of first importance. The act of March 22, 1816, (3 St. at Large, 258,) makes it necessary to recite this certificate of report and registry in the record of the court admitting the alien. This is repealed. 4 St. at Large, 310. The certificate referred to in the thirteenth section of the act of 1813 is a "certified copy of the act by which the alien shall have been naturalized." This necessarily is the order of the court, or an extract therefrom.

I have examined with carefulness every case cited upon the elaborate brief of the solicitors for defendant, but I find nowhere a departure from the rule that the record must be produced or accounted for.

In *Campbell* v. *Gordon*, 6 Cranch, 176, relied on by defendants, there was produced, not only the certificate of the clerk, but the minutes of the court; and this view of that decision is entertained by the supreme court of Georgia in *Miller* v. *Reinhart*, *supra*. Besides, the certificate had appended to it these words: "A copy. Teste: JOHN C. LITTLE-PAGE,"—who it appeared otherwise in evidence was the clerk.

The certificate in *Re Coleman*, 15 Blatchf. 406, 432, began, "Be it remembered," and ended, "By the court. JAMES M. SWEENEY, Clerk." Here, too, the oath was in the record, the original application was on file, and the initials of the judge, in his own handwriting, were written across the paper. This was judicial action. The court in that case does not, as insisted by counsel for defendant, hold that no order of admission was necessary, but simply that the entries made by the judge were regarded by the judge as an order, and would be considered as such, and the certificate, with the words "By the Court," was sufficient to show that the court really acted. Here, however, not only does it fail to appear that there was any action by the court, but it does affirmatively appear that there was no court in session at the time when Salas insists he was admitted.

Whenever a court attests its own proceedings and acts, unerring verity is attributed by the law to the record, *Quod per recordum probatum, non debet esse negatum.* The minutes show that the court was adjourned on the eighth day of December, 1856, until the third Monday, which was the nineteenth day January, 1857. The adjournment is recorded on page 185 of the minutes, and the record of the transactions of the nineteenth January are recorded on the next page, and on the other side of the same leaf. How then can it be said that on the fourteenth day of January the defendant was made a citizen by the court?

Nor is it competent to supply alleged deficiencies in the record by parol evidence. The record, if not correctly made up, or if lost or destroyed, should be perfected or replaced by appropriate proceedings in the court where the judgment was pronounced. Freem. Judgm. § 38; Bigelow, Estop. 34. Naturalization cannot be proved by parol. *Slade* v. *Minor*, 2 Cranch, C. C. 139; *Dryden* v. *Swinburne*, 20 W. Va. 89; 18 U. S. Dig. (N. S.) 18.

Were the record and the evidence of that character that the court could hold that Mr. Salas had ever become an American citizen, it is evident since then he has renounced his allegiance to this government, and has been redintegrated as a subject of the Spanish king. In 1869, Mr. Salas executed in writing a formal renunciation of all his rights and privileges as an American citizen. He pasted it on his certificate of naturalization, and filed both with the clerk who issued the certificate. He had spent all that troublous period of American history, between 1861 and 1865 inclusive, in foreign parts, mainly in Spain, the country of his origin, but he returned to this country in 1865. Nevertheless, on the twentieth day of July, 1869, the Captain General of Cuba, his excellency, Don Antonio Caballero Y Fernandez de Rodas, issued, on the application of Mr. Salas, the following *pronunciamento:*

"In the city of Habana, the twentieth July, of 1869, his excellency, Antonio Caballero Y Fernandez de Rodas, captain general, military and political governor general, of the ever faithful island of Cuba, president of its council of administration, etc., said that, in virtue of the petition of Mr. Ramon Salas, of Mont Blanc, native of Sabadell, province of Barcelona, professing the Apostolic and Roman Catholic religion, married, residing in the city of Matanzas, his profession commerce, and 40 years of age, and who, after having obtained letters of American naturalization, petitions now to regain again his Spanish naturalization, in virtue of the information annexed to the aforesaid petition, making evident the good antecedents, moral and political, of Mr. Salas; also his stay of many years in this country,—should declare, and did declare, in favor of the aforesaid Mr. Ramon Salas, of Mont Blanc, all the rights of naturalization, so that henceforth he may enjoy them in accordance with what is prescribed by the royal order of October 21, 1817; and to that effect a copy of the present shall be issued to serve him as his letters of naturalization, he to apply with same to the corresponding offices of the government; also to those of the city council, for the purpose of being recorded.

"In testimony whereof I sign the present.

[Signed] "ANTONIO CABALLERO-FRANCO DE CASTRO."

The authenticity of this record is unquestionable, and Mr. Salas avows his participation in this application to the captain general, and states that he intended to become a Spanish citizen, that he regarded himself as such, and would have lived, and no doubt have died, imbued with the spirit of fealty to his most Catholic majesty, but for the fact that his counsel assured him that he was an American. Mr. Salas comported himself as a dutiful and submissive subject of Spain for about eighteen years after this renewal of Spanish allegiance. Neither the king of Italy, nor the authorities of Uruguay or Peru, could induce him to hold their consulships until he had asked permission of the king of Spain, and had issued from the Escorial the following stately manifesto:

"The minister of the interior says to the state department, under date of twenty-eighth December last, as follows: For information it has been remitted to the council of state of this department the petition of Mr. Ramon Salas, native of Sabadell, Barcelona, and a resident of Savannah, U. S., soliciting authority to perform the duties of consular agent of Italy, vice-consul of the Uruguay Republic, and consul of Peru, without losing the rights of Spanish citizen, the above-mentioned council of state has emitted the following opinion: In accordance with the royal order of twenty-third October last, the council of state has examined the petition herewith inclosed, addressed to the minister of state, and by him transmitted to the minister under your charge, wherewith Mr. Ramon Salas, native of Sabadell, province of Barcelona, and resident of Savannah, U. S., in which place he fulfills honorably, for some time, the offices of consular agent of Italy, vice-consul of the Uruguay Republic, and of consul of Peru, asks for authority to continue holding said offices, without losing the rights of a Spaniard, which authority he has not asked before now, because, in consequence of his long stay abroad, he was not aware that, in accordance with the constitution of his country, he required such authority. Article first of our present constitution really says that the rights of a Spaniard are lost by accepting employment from other governments without first receiving permission from the king. Therefore, rigidly speaking, Mr. Ramon Salas cannot be considered a Spanish subject, in virtue of his having accepted, without authority, his present consular employment; but as in his petition he reveals the noble desire of preserving our nationality, also his intention of obeying the laws now ruling in Spain, the aforesaid council of state is of opinion that, by dispensing to Mr. Ramon Salas the omission above mentioned, the authority solicited may be granted to him. Your excellency will, however, resolve with his majesty whatever you may deem best; and his majesty, the king, having resolved in conformity with the above-mentioned opinion, I have the honor to transmit same to your excellency, to the opportune effects; all of which I transmit now to you by order of the minister of state, in reply to your petition dated sixth October last.

"Given in Palace the seventh day of January, 1879.

"The subscribing minister of state,
    [Signed]                     "RAFAEL FERRAZ.

"*To Mr. Ramon Salas, Madrid.*"

Mr. Salas filed the Spanish copy of this document with the consul of Spain, in Savannah, as notice to all the world that he was a Spaniard, and not a free American citizen, who will acknowledge neither king nor kaiser.

But it is said that Mr. Salas did not change his residence, and for that reason did not change his domicile, and without a change of domicile there can be no expatriation. It is true, however, that the domicile of birth easily reverts, and a very short residence with the intention to change domicile is sufficient, but long continued residence, without such intention, is insufficient, (Myers, Fed. Dec. 505, and the authorities there cited;) and a native of a foreign country may reassume his original citizenship under such conditions as the authorities of his government require. 9 Op. Attys. Gen. 62. The fact of expatriation is to be proved like any other fact for which there is no prescribed form of proof; that is, by any evidence that will convince the judgment. Id. See, also, *The Venus*, 8 Cranch, 280; 14 Op. Attys. Gen. 295. In this country expa-

triation is a fundamental right. *Stoughton* v. *Taylor*, 2 Paine, 661; Rev. St. § 1999. The moment a foreign domicile is abandoned the native domicile is reacquired. There can be little doubt that the captain general of Cuba had sufficient evidence before him to satisfy him of a residence there by Mr. Salas, which, taken with his declared intention to renew his allegiance, would make him a subject of Spain. The genuineness of the letters of naturalization issued by the captain general of Cuba is not controverted. This being true, it follows that inasmuch as he was governor of the island, possessing a high executive and superintending control, we must presume that he acted on this occasion with legitimate authority. *Bingham* v. *Cabbot*, 3 Dall. 39; *U. S.* v. *Reading*, 18 How. 13.

Nor do I think that Mr. Salas can be heard when he avows that he did not change his domicile. If, in truth, he did not, he certainly imposed upon the Spanish authorities, and "*Nemo allegans suam turpitudinem, audiendus est.*"

It is insisted by counsel for defendant that the complainants here were neither parties nor privies to this action of the defendant, and they are in no wise interested in the defendant's conduct, and cannot insist that he is estopped from denying his Spanish citizenship. The court, however, representing in a degree the dignity of American citizenship, and empowered to adjudicate its own jurisdiction, will not recognize as an American one who deliberately renounces his citizenship here, and who places himself under the dominion of another government, and for 18 years has held himself out to all men as an alien.

On both grounds, therefore, the plea is overruled; and the court, having jurisdiction of suits to which aliens are parties, will entertain it here.