### In re BODEK.

(Circuit Court, E. D. Pennsylvania. October 11, 1894.)

1. ALIENS—NATURALIZATION PROCEEDINGS.

An applicant for naturalization is a suitor who, by his petition, institutes a proceeding in a court of justice for the judicial determination of an asserted right, and such petition must allege the existence of all the facts, and the fulfillment of all the conditions upon which the statutes (Rev. St. §§ 2165, 2167) make the right dependent, and must be supported by legal proofs of the facts on which the petition rests.

2. SAME—EXAMINATION.

The applicant's oath to support the constitution of the United States will not be accepted if, upon examination, it appear that he does not understand its significance, or is without such knowledge of the constitution as is essential to the rational assumption of an undertaking to support it; and the court will not admit the applicant to citizenship without being satisfied that he has at least some general comprehension of what the constitution is, and of the principles which it affirms.

3. SAME—MORAL CHARACTER—EVIDENCE.

The requirements as to moral character and a disposition to good order must be shown by competent evidence.

4. SAME—DECLARATION OF INTENTION—MINORS.

Where the oath declaring the previous intention in the case of an alien coming to this country before majority is made under Rev. St. § 2167, it must be supplemented by proof that the applicant has, for the designated period, actually intended to become a citizen.

5. SAME—TIME OF FILING PETITIONS—ADJUDICATION.

Petitions for naturalizations must be filed at or before the time of their presentation, and judgments upon them, whether adverse or favorable to the petitioners, should be formally entered.

This was a petition by Wolf Bodek to be admitted to become a citizen of the United States.

DALLAS, Circuit Judge. In pursuance of its power to "establish an uniform rule of naturalization" (Const. art. 1, § 8), congress has prescribed the conditions on which an alien may become a citizen of the United States, and the manner in which, "and not otherwise," he may be admitted to citizenship. By section 2165 of the Revised Statutes the following requirements, among others, are imposed upon every applicant under that section: (1) He shall have made the declaration which is there set forth "two years, at least,

prior to his admission;" (2) he shall, at the time of his application to be admitted, declare on oath "that he will support the constitution of the United States;" (3) he shall make it appear to the satisfaction of the court (his oath not being allowable to prove residence) that he has resided within the United States five years, and within the state where the court is held one year, at least, and that during that time he has behaved as a man of good moral character, attached to the principles of the constitution of the United States, and well disposed to the good order and happiness of the same. By section 2167 especial provision is made for the admission, "without having made the declaration required in the first condition of section 2165," of aliens coming to this country during their minority; but to entitle any applicant to the benefit of this exemption it is exacted that (1) he shall have resided in the United States three years next preceding his arrival at the age of 21 years, and for the period of 5 years, including the 3 years of his minority, and shall have continued to reside therein to the time of making his applica-' tion, and shall then have attained his majority; (2) he shall make the declaration required in the first condition of section 2165 at the time of his admission; (3) he shall declare on oath, and prove to the satisfaction of the court, that for two years next preceding it has been his bona fide intention to become a citizen of the United States; (4) he shall in all other respects comply with the, laws in regard to naturalization. The acts of congress from which the foregoing statement of their more generally important provisions has been compiled enjoin the terms on which, and on which only, an alien may acquire citizenship; and the courts to which is confided the duty to see that these terms are complied with "are to receive testimony, to compare it with the law, and to judge on both law and fact." Marshall, C. J., in Spratt v. Spratt, infra. Their function is judicial. The courts have so held. The executive department of the government has so declared. The statutes themselves show that congress so intended. There can be no doubt about it. Campbell v. Gordon, 6 Cranch, 176; Stark v. Insurance Co., 7 Cranch, 420; Spratt v. Spratt, 4 Pet. 393; Green v. Salas, 31 Fed. 106; U. S. v. Norsch, 42 Fed. 417. See, also, Whart. Int. Law, § 174a, where, among other pertinent documents, a letter, dated March 7, 1879, is referred to, in which Mr. Evarts, then secretary of state, used this language: "It certainly is not competent for the department of state * * * to go behind a judicial decision of a court of law, such as is a certificate of naturalization." An applicant for naturalization, then, is a suitor, who, by his petition, institutes a proceeding in a court of justice for the judicial determination of an asserted right. Every such petition must, of course, allege the existence of all facts, and the fulfillment of all conditions, upon the existence and fulfillment of which the statutes which confer the right asserted have made it dependent, and I believe that the petitions usually presented conform to this rule. But the presentation of the petition merely brings the matter before the court, and the burden then rests upon the petitioner to establish its material allegations by such evidence as the law has made requisite, and

"which ought, indeed, to be required to satisfy the judgment of the court." Spratt v. Spratt, supra. Without this there can be "no such judicial inquiry into the case as the act of congress contemplates." U. S. v. Norsch, supra. In short, as was said in Re An Alien, 7 Hill, 137, cited in Green v. Salas, supra: "The application must be supported by legal proof of the facts on which it rests. The proceedings are strictly judicial. The alien who applies for admission asserts a compliance on his part with the 'prescribed conditions, and he must furnish the requisite proof of what he so alleges, or he establishes no right." Proof that the declaration required in the first condition of section 2165 has been duly made is, of course, necessary in all cases to which that section applies; but, as such proof is ordinarily supplied by the production of a sufficient certificate, nothing need be said under this head. Of the fact of making the declaration to support the constitution of the United States no extrinsic evidence is necessary, for it is made in the presence of the judge; but it by no means follows that the court is charged with no duty with respect to this declaration. It may safely be assumed, I think, that congress, in requiring it to be made before the court, meant to assure its being made with decent solemnity; but, more than this, it is expressly provided that it shall be made "on oath," and therefore, in my opinion, it should not be accepted in any case in which, upon examination, it appears that the applicant does not understand its significance, or is without such knowledge of the constitution as is essential to the rational assumption of an undertaking, avouched by oath, to support it. In many instances these declarations are made by men who have no counsel to inform or restrain them, and who themselves have no adequate appreciation of their purport, or of the sacredness of the accompanying oath, which, in order to accomplish the object in view, they are often quite willing to take as a matter of course. I cannot shut my eyes to the existence of this abuse (see Shars. Leg. Eth. p. 111), nor regard as sufficient under the statutes any oath which relevant questioning results in showing is not intelligently and conscientiously tendered. Furthermore, the law requires that "it shall be made to appear to the satisfaction of the court" that the applicant has behaved as a man attached to the principles of the constitution; and, bearing this in mind in connection with what has already been said, the conclusion seems to be inevitable that the court ought not to admit any alien to citizenship without being satisfied that he has at least some general comprehension of what the constitution is, and of the principles which it affirms. As to the requirements with respect to the applicant's residence, moral character, and disposition to good order, it is enough to say that their fulfillment must all be competently established; and that as to the first of them the petitioner's own testimony is not admissible, and as to the others is of little or no weight. With especial reference to the class of cases commonly distinguished as "minority applications" but little need be added. The provision that in these cases the laws in regard to naturalization, except as modified by section 2167, must be complied with, makes the preceding observations

applicable, in great part, as well to them as to cases under section 2165. In addition, however, to the proof heretofore discussed, applicants under section 2167 must prove the particular facts in respect to residence and age which that section requires to be established; and, inasmuch as a declaration of intention two years prior to admission is dispensed with only on condition that a like declaration shall be made at the time of admission, and that the applicant shall then further declare on oath, and prove to the satisfaction of the court, that for two years next preceding it has been his bona fide intention to become a citizen of the United States, it is necessary, not only that these declarations shall be made under oath, but also that they shall be supplemented by proof that the applicant has, for the designated period, actually purposed to become a citizen of this country.

In this district it has been the practice to interrogate applicants and their witnesses after the manner which has been indicated, and increased experience confirms me in thinking that this practice should be inflexibly and rigorously adhered to. I am aware that judges of the highest character have not felt themselves called upon to scrutinize the declarations, oaths, and testimony made and adduced in support of petitions for naturalization further than is necessary to ascertain whether the terms of the statutes have been prima facie complied with; but this course of procedure had its inception at a time when its inadequacy was not apparent. Eighteen years after the passage of the act from which section 2165 of the Revised Statutes is derived, the number of passengers who arrived in the United States by sea from foreign countries during a period of 12 months, viz. during the year ending September 30, 1820, was still only 10,311, and of these at least 3,000 were women and more than 1,000 were minors. Bromwell's History of Immigration, pp. 21, 22. Probably not more than 5,000 of these immigrants ever applied for admission to citizenship, and when it is remembered that the applications of those who did apply were distributed among the then existing courts, state and federal, it becomes evident that their attention was not likely to have been drawn, as that of this court imperatively is, to the absolute necessity for caution in the administration of this peculiar jurisdiction, which brings to its bar (especially as the day of any general election approaches) a multitude of suitors, claiming the award of a privilege to which, as the slightest investigation discloses, very many of them are not entitled. At all events, but with unfeigned respect for those who inaugurated and for those who have adopted the more tolerant practice which has been referred to, I will not pursue it. My own judgment does not approve it, and I have been unable to find any considered judicial opinion in support of it, while those which are embodied in the reports of the cases previously cited seem to be in palpable conflict with it.

I have dealt with this subject at greater length than I otherwise would have done, because I deem it to be desirable that the views I have expressed should be better understood than they appear to be; and with like object—not in censure of this particular

applicant—I take this occasion to further remark that naturalization petitions must be filed at or before the time of their presentation, and that judgment upon them will be formally entered, as well in cases where it is adverse as in those in which it is favorable to the petitioner. I see no sufficient reason for waiving in these proceedings the incidents which regularly pertain to all others of similar character, and I have found that omission of those I have mentioned tends to facilitate the reprehensible repetition of identical applications, without disclosure of the fact of prior adjudication. The jurisdiction of the court is derived from the statutes. It does not depend upon the facts of a particular case (U. S. v. Walsh, 22 Fed. 644–649), and no one who invokes its exercise can be allowed to withdraw his cause after the judgment of the court has been rendered against him.

The present petition contains several objectionable erasures and interlineations in material parts. Apart, however, from this defect, it has not been supported in accordance with this opinion, and therefore, October 1, 1894, it is ordered that the said petition be filed, and that thereupon judgment be entered refusing the prayer thereof.