# FELIX URRUTIA CALDERIN

*v.*

# RAFAEL FABIAN Y FABIAN

---

Law, No. 552.

1. One born in Porto Rico, and of age and a resident here when the treaty of peace was ratified, is a citizen of Porto Rico, and, as long as he con-

Calderin v. Fabian y Fabian.

tinues to reside in Porto Rico, he cannot, as the law now stands, acquire a different nationality.

2. As far, at least, as the jurisdiction of this court is concerned, Spain cannot, by her own *ex parte* act, vary the terms of the treaty of Paris, and a Royal decree admitting one to Spanish citizenship who is and continues to be a resident and a citizen of Porto Rico under existing laws is a nullity here.

3. This is so despite the fact that such a person wishes to be a Spanish citizen, and is registered as such in that country's consulates.

Opinion filed May 11, 1908.

---

*Messrs. Henry F. Hord* and *Joseph Anderson, Jr.,* for plaintiff.

*Mr. Thomas D. Mott, Jr.,* for defendant.

Rodey, Judge, delivered the following opinion:

The issue before us is on the plea to the jurisdiction for lack of diverse citizenship in the sense of the Foraker law and its amendments. The plaintiff is a Porto Rican and the three defendants are alleged in the complaint to be Spaniards, doing business in Porto Rico as publishers of the "Heraldo Español." The defendant Vicente Balbas y Capó pleads that he is, under the law, a Porto Rican. The suit is for an alleged libel of the plaintiff by the defendants in their said newspaper, and the damages claimed are $15,000. A hearing as to the truth of the plea was had, when a unique situation was disclosed. The defendant Vicente Balbas y Capó was born at Ponce, in Porto Rico, of Spanish parents, his father being a native of the Peninsula of Spain and his mother a native of Porto Rico. He was a man

thirty-five years of age, or thereabouts, when the war of 1898 between Spain and the United States began. He was a representative from Porto Rice in the Spanish Cortes or Parliament before or at the time of the breaking out of the war. He is an intense Spaniard in sentiment. The provisions of § 9 of the treaty of Paris, as well as § 7 of the Foraker law (31 Stat. at L. 77, chap. 191), unquestionably shut him out from the right of retaining or regaining his Spanish citizenship while continuing to reside in Porto Rico. He evidently did not like this, and, happening to be over in Spain shortly after the signing of the treaty, made considerable effort there to, in some manner, preserve his Spanish citizenship, while still wanting to live in, and refusing to change his residence from, Porto Rico. He did not accomplish much in this regard at that time, and in a few months, when the business he went there for was ended, came back to Porto Rico, but continued his efforts to regain his Spanish citizenship by writing letters to his former colleagues in the Cortes, and to other high officials of Spain, and he even addressed a letter to the Queen Regent on the subject, trying to get something done to regain his former status and keep him a Spaniard.

After some time he succeeded in getting a Royal decree or edict declaring him to be a Spaniard, issued to him, but it seems the decree itself (although he had no copy of it to introduce in evidence), in substance or in terms, stated that it was not intended to conflict with any provision of the treaty of Paris between the United States and Spain, so long as the said defendant continued to reside in Porto Rico. However, the defendant procured this royal decree or edict to be recorded with the Spanish consul here in Porto Rico, and afterwards when he went to

Calderin v. Fabian y Fabian.

New York, deposited it with the Spanish consul there. He openly avows on the stand that he is unwillingly a Porto Rican by law, and that in Spain he is a Spaniard by law, and wishes he could be so in Porto Rico; at least, that is the inference to be drawn from his testimony.

We have passed upon so many different phases of this Spanish-Porto Rican citizenship question as applicable to the jurisdiction of this court under the Foraker law (Vallecillo y Mandry v. Bertran, 2 Porto Rico Fed. Rep. 46; Luce v. Mullenhoff, 2 Porto Rico Fed. Rep. 56; Re Bonnet y Jaspard, 2 Porto Rico Fed. Rep. 70; Rios de Rubio v. Burset, 2 Porto Rico Fed. Rep. 189; Laborde v. Laborde, 2 Porto Rico Fed. Rep. 493; Rodriguez y Pujals v. Argueso y Flores, 2 Porto Rico Fed. Rep. 517; Martinez de Hernandez v. Casañas, 2 Porto Rico Fed. Rep. 519; 2 Porto Rico Fed. Rep. 532, note), and, our time being at present limited, we do not feel justified in writing as elaborate an opinion on the subject as the unique situation prompts us to do.

This defendant apparently loves Spain, and is avowedly a patriotic adherent of that country, yet he comes into this court and claims he is a Porto Rican by law, and insists that therefore this court has no jurisdiction to entertain a suit against him for a tort he is alleged to have committed against another Porto Rican. This may be his privilege.

Our country has ever claimed the right to receive the allegiance of all foreigners possessing proper qualifications, and has conferred the blessings of our citizenship upon them when they complied with the legal requirements. It is said that the War of 1812 was largely brought about by the efforts of England, in denial of this doctrine, with her press gangs to take her former subjects after they had become American citizens

and were engaged as sailors on our ships. Having thus, from the first, insisted upon the natural right of individuals to change their allegiance and come to us, our government has always in like manner recognized the right of American citizens, either those naturalized or native born, to expatriate themselves and transfer their allegiance to other governments. This latter doctrine was affirmed by an act of Congress of July 27, 1868 (15 Stat. at L. 223, chap. 249, §§ 1999, 2000, U. S. Rev. Stat. U. S. Comp. Stat. 1901, pp. 1269, 1270).

Spain, of course, could not if she would, by her own *ex parte* act, vary the terms of the treaty of Paris. Even the Royal decree of May 11, 1901, it has been held, does not do so (Magoon, Civil Government under Military Occupation, p. 172), nor does this special Royal decree or edict, as it applies to the defendant here in Porto Rico, do so either; nor could it, in our opinion, do so even if it, by its terms, made the attempt.

This defendant not being a "native of the Peninsula" or a minor at the time of the ratification of the treaty of Paris, and continuing to reside in Porto Rico, and never having left it with the intention of remaining away, for the purposes of jurisdiction here was incapable of preserving his Spanish allegiance under the terms of that treaty.

The jurisdiction of this court and courts in the states to which it is similar is limited, and, where it is lacking, its judgment is, on proper attack, a nullity. So, of course, where diverse citizenship is the only ground of jurisdiction, it does not exist when such diversity is wanting. If the King of Spain could now issue a Royal decree or edict making individual native-born Porto Ricans Spanish subjects, while still continuing, without interruption, to reside in Porto Rico,—which, in fact, in

Calderin v. Fabian y Fabian.

this case he has not attempted to do, because the decree in question, even if valid to any extent, applies only when this defendant shall live in Spain, or outside of the jurisdiction of the United States,—then he need not limit it to one individual, but he could, in like manner, promulgate a decree making the entire population of the island collectively Spanish subjects, and thus abrogate a very material provision of the treaty. No one will contend that this could be done.

Personally we have never been satisfied with the anomalous situation in which Congress has left the matter of the citizenship of Porto Ricans since the treaty of Paris, and we would regard the action of this defendant in quite a different light if he were trying to claim full-fledged American citizenship for the purpose of defeating the jurisdiction here. Were he claiming the benefits of that great blessing in bad faith, just to oust the jurisdiction, while still asserting his undying fealty to his former sovereign, we would, in the light of what he has done and said as to his sentiments, not hesitate to hold him a Spaniard. See Charles Green's Son v. Salas, 31 Fed. 111. But the treaty of Paris is the law of the land in Porto Rico. Courts do not (or should not) make the law; their duty being to administer it as they find it. Hence, believing, as we do, that this man is, in contemplation of law, a Porto Rican, at least, in Porto Rico, the plea must be sustained; and, unless the complaint is so amended within two days as to confer jurisdiction, the cause will stand dismissed without any further action of the court.