BRASSERT v. BIDDLE, Attorney General
of the UNITED STATES.

No. 1067.

District Court, D. Connecticut.

April 21, 1944.

458

Harry L. Filer, of New Haven, Conn., and Scandrett, Tuttle & Chalaire, and Bernard Phillips, all of New York City, for plaintiff.

Robert P. Butler, U. S. Atty., of Hartford, Conn., and Thomas J. Dodd, Jr., Sp. Asst. to the Atty. Gen., for defendant.

HINCKS, District Judge.

This is an action for a judgment declaring the plaintiff to be a citizen of the United States.

## Findings

I find that the plaintiff in 1897, when then a subject of the British sovereign, immigrated to this country and thereupon acquired a domicile in Pittsburgh, Pennsylvania. On August 4, 1904, when a resident of Pittsburgh, he duly filed his declaration of intention to become a citizen of the United States in the office of the Clerk of the District Court of the United States for the Western District of Pennsylvania, in Pittsburgh. The original record of that declaration is in existence and indeed was produced as an exhibit in this case.

In the summer of 1908 the plaintiff, believing that his naturalization had theretofore been fully accomplished, went abroad and while abroad his wallet was lost or stolen containing what he believed to be his certificate of naturalization. Upon his return to this country he obtained from the Clerk of the United States District Court for the Western District of Pennsylvania what purported to be a duplicate certificate of naturalization. This so-called duplicate is in evidence as Exhibit A. The signature of the Clerk thereto and the seal of the court thereon I find to be genuine; indeed, the authenticity of signature and seal is not questioned. The duplicate, however, is dated December 24, 1908, and recites that the plaintiff was admitted to citizenship on August 4, 1904.

This certificate the plaintiff used thereafter as the occasion arose to evidence his citizenship and to obtain passports. In April, 1941, the plaintiff had occasion to acquire a certificate of identity to permit his reentry from the Bahamas where he then happened to be. To obtain this certificate of identity he caused the so-called duplicate certificate of naturalization to be delivered to the Immigration and Naturalization Division which ever since has refused to return the same.

The plaintiff testified that he had been admitted to citizenship by the United States District Court for the Western District of Pennsylvania in 1908. However, his recollection of that fact was exceedingly uncertain. He seemed by no means sure whether his admission occurred in 1908 as alleged in the complaint, or in 1906 as he had previously stated, and whether his admission was indeed accomplished in Pittsburgh where unquestionably he had filed his first papers, or possibly in Chicago where he had subsequently spent much time on business.

Although the plaintiff had caused extensive search to be made of the naturalization records of the court in Pittsburgh, and one now a deputy clerk of that court had also searched said records, no record of any decree or order of the court was found or produced to show that the plaintiff had been admitted to citizenship. Nor was any evidence offered or received to show that the naturalization records of that court, or of any other court which had admitted the plaintiff to citizenship, had been lost or destroyed. On the contrary, the evidence tended to show that the naturalization records of the Pittsburgh court were substantially well-kept and complete.

On all the evidence I feel constrained to find that the recital of the date of the plaintiff's admission as set forth in his certificate, Exhibit A, was a clerical error, and that prior to December 24, 1908, when said certificate was issued, he was in fact admitted as a citizen and still has that status. Also that there is genuine and actual controversy between the parties as to the plaintiff's citizenship.

## Conclusions of Law

1. The certificate, Exhibit A, has the probative effect of a certified copy of the judicial record of the court in Pennsylvania and as such imports not only the truth of its recitals but also that on the date of its issue the judicial action recorded therein had been reduced to a proper judicial record.

2. The fact that the certificate has been successfully impeached as to the recited date of plaintiff's admission does not necessarily destroy the probative effect of the certificate either as to the fact of admission or as to the existence then of a judicial record of the judicial act accomplishing the admission.

3. There is an actual controversy between the parties within the meaning of the Declaratory Judgment Act. 28 U.S.C.A. § 400.

4. The plaintiff is entitled to a decree declaring him to be a citizen of the United States and to have been such since December 24, 1908.

5. The plaintiff is not entitled to a decree requiring the defendant to issue to him a new certificate.

6. The defendant on his cross-complaint is entitled to a decree providing that in the event, but only in the event, a new certifi-

cate shall be issued to the plaintiff reciting his admission to citizenship on or before December 24, 1908, the certificate, Exhibit A, may be cancelled.

## Opinion

It is not disputed, I think, that citizenship may be proved either by a certified copy of the judicial record of naturalization issued by the Clerk of the Naturalization Court in which the naturalization was accomplished, or by the naturalization certificate provided for in the naturalization laws. Although, I confess, the point has caused me considerable perplexity, I hold that if in either such document an error is proved, it is a matter for the sound judgment of the trier to decide whether the remainder of the document is trustworthy. Fundamentally, the situation is not different from that in which the testimony of a witness is found wrong in one respect. In such cases, of course, the trier will not necessarily reject the entire testimony. It is for him to decide whether that part not shown to be in error is entitled to credit, and if so to appraise its weight. If there is no ground shown for believing that the error demonstrated was recklessly or fraudulently made, the remainder may normally be accorded appropriate weight.

Here the error in the recital of the date is fully demonstrated. The original record shows that plaintiff filed his first papers on August 4, 1904. Hence his admission on that date was a legal impossibility. But there is nothing even to suggest that the error was fraudulently made. Rather the question is to what extent the existence of that error impairs the weight properly to be accorded to the other recitals of the certificate.

As to this, the facts that the plaintiff had indeed filed his first papers in August, 1904, and two years thereafter was fully eligible for admission may not be ignored. And the very nature of the demonstrated error is such, I think, as not readily to lend itself to an inference that the error extends to the recital of admission. For upon an application for a duplicate to replace a lost original the primary issue raised is whether admission had in fact theretofore been accomplished by a judicial act judicially recorded: the date of admission in a very real sense is only incidental or in any event of lesser importance. Thus viewing the duplicate certificate as the con-

temporary testimony of the clerk who was the official responsible for making and keeping the record, the testimony as to the primary fact ought not legally be rejected for error in his testimony as to the date.

Moreover, a reconstruction of the clerical task required when such an application for a duplicate is made tends to support the view that the error in date should not be taken completely to destroy the probative effect of the recital of admission. On receipt of such an application, some deputy would normally search the record for the entry of the admission and, having found it, to insure that the existing record was complete would normally trace the case back to the filing of the first papers. One would expect that he would make notes of the dates of the successive papers as he proceeded in his task. And if on the completion of his task on the certificate prepared for the signature of the clerk the date of the first entry should be substituted for that of the last entry, it is more reasonable to infer that the error resulted from an inadvertence, perhaps from some confusion in his notes, rather than to infer that he was recklessly and culpably negligent in wholly failing to verify the existence of the record of the admission.

To be sure, on the other side of the scales is the testimony of one now a deputy to the effect that the naturalization records of the court relating to the relevant period now appear to be in good order and are not found to contain any record of plaintiff's admission. But in the nature of things testimony as to a negative fact such as is here involved generally is not as strong as direct testimony of the positive fact such as is contained in the official duplicate certificate. Moreover, testimony now as to the nonexistence of a record then lacks the weight of the testimony of the responsible official given 35 years nearer to the date of the original entry of the record in question.

In this connection, I think we may give at least some weight to the common knowledge that in 1908 and particularly prior to September 29, 1906, when the substantive provisions of the Naturalization Act of 1906, 34 Stat. 596, 607, became effective, naturalization records were generally kept much more loosely than now. And it is indeed possible that the particular entry with which we are now concerned found its way into some volume other than those generally used for naturalization rec-

ords and hence has wholly eluded all recent searches which after all were not of exhaustive dimensions. Surely the law does not refuse to take into account the fallibility of human clerical activity and conclusively assume that even in the best kept offices every one of the myriad entires required has been put in its proper place.

And so, only by striking the foregoing balance between the conflicting items, and without relying upon plaintiff's oral testimony that he was in fact admitted and once had an original certificate to that effect, I have reached my finding of his admission and of the fact that at least prior to December 24, 1908, there was a judicial record of his admission.

This finding, it is true, presupposes that the duplicate certificate in evidence may have probative force notwithstanding that its content fails to include all the detail which the Naturalization Act of 1906 requires. And such indeed is my ruling. For neither the Act of 1906 nor any other naturalization law with which I am familiar purports to promulgate a code, or even a rule, of evidence, which is binding on the courts. Since an early date in our history, courts have recognized the probative effect of naturalization certificates, Campbell v. Gordon, 6 Cranch 176, 3 L.Ed. 190, even in a total absence of express statutory sanction for their issue. 1 Stat. 414. And on the same principle a duplicate certificate issued by the same responsible official and authenticated by the same seal of court is entitled to as much force as the original certificate.

The rule of Charles Greene's Son v. Salas, C.C.Ga., 31 F. 106, if ever sound, I think is not now the law. Otherwise, the myriads of certificates now outstanding are of no legal worth whatever. It is not reasonable to infer that the careful provisions of the Act of 1906 and all subsequent Naturalization Acts for the issue and safeguarding of certificates was intended merely to protect the authenticity of sentimental souvenirs.

Gagnon v. United States, 193 U.S. 451, 24 S.Ct. 510, 48 L.Ed. 745, which the defendant relies upon, does not conflict with the foregoing holding. There there was no competent evidence that a judicial record of the questioned naturalization had ever existed. Here, there is competent documentary evidence (Exhibit A) of sufficient weight to persuade me that the judicial record once, at least, did exist.

The detail of the certificate required under the Act of 1906 is in the nature of an administrative rule for the guidance of the clerks of court. This I think is emphasized by the Naturalization Regulations of October 2, 1906, promulgated shortly after the effective date of the Act, which require that an application for a duplicate certificate to replace a lost original shall be made under oath to the clerk of court who shall forward the same to the Bureau and defer the issue of the duplicate until the Bureau reports the results of its investigation. The regulation attests the existence of a practice whereby clerks of court may issue duplicate, as distinguished from original certificates without express statutory sanction. And in that the regulation purports not to control the ultimate action of the clerk—still less the action of the court in receiving such a certificate in evidence and appraising its probative effect—indicates that the administrative rule is directory only, not affecting the validity or effect of a certificate which is actually issued.

It may be that a certificate not fully containing all the detail required by statute or not prepared with all the preliminary administrative routine required by regulation is subject to direct attack or to correction on grounds other than fraud or illegality. It may be that unlike a certificate regular in all respects, it is not self-proving in the hands of its holder. But it does not follow, when controversy arises, that such a certificate is a nullity,—inadmissible for any purpose and wholly without probative force.

This construction of the Act has certain support in its text. Thus the certificate provided for, under Sec. 27, Act of 1906, is required only in "substantially" the form set forth. And so, I think, a certificate which, like Exhibit A, sets forth the operative facts may well be deemed valid and effective even though the clerical detail and descriptive matter, though doubtless desirable from an administrative viewpoint, are absent.

In this connection, I observe that it is not wholly plain that the form of this particular certificate is within the reach of the Act of 1906. Not unnaturally the plaintiff's recollection as to the date of his admission after all the busy years which have intervened is dim and vague. It is possible that

462

his final petition may have been filed before September 29, 1906, when Sec. 27 of the Act of 1906 became effective. If that were so, it might perhaps be doubted whether Sec. 27 which provides that substantially the form of certificate therein set forth "shall be used in the proceedings to which they relate" indeed relate to a proceeding instituted by a petition filed before the Act became effective. In any event, the difficulty, perhaps the physical impossibility, of full compliance by the Bureau and Clerks of Naturalization Courts throughout the length and breadth of the land with all the new detail required under the Act of 1906 within 90 days of its date of approval, is apparent.

▇▇▇ Although, for the reasons stated, I am satisfied to enter a decree declaring the plaintiff a citizen and to have become such prior to December, 1908, I see no occasion for injunctive relief. A certified copy of the decree herein, if it becomes final, I should suppose would attest the plaintiff's citizenship as well as a certificate. If for reasons of convenience, a certificate is also desired, there is no present ground for belief that an application supported by a certified copy of the decree herein will not promptly be granted, under 8 U.S.C.A. § 741, in the usual course. To be sure, the Commissioner will not be able to specify the exact date of naturalization on such a certificate. But a recital therein of admission on or before December 24, 1908, will have factual support in the decree herein, and will be "substantially" in conformity with the form of certificate now prescribed. 8 U.S.C.A. § 736. Indeed, the unusual features of this case well illustrate the Congressional wisdom in infusing the Act with the moderate flexibility which it contains.

▇▇▇ To the defendant's cross-complaint, Section 340 of the Nationality Code of 1940, 8 U.S.C.A. § 740, plainly does not apply. That statute authorizes the Commissioner, in the exercise of his own proper administrative functions without resort to judicial aid, to cancel any certificate which was issued by the Commissioner or a Deputy Commissioner and illegally or fraudulently obtained. This statute is thus designed to confer only administrative power on the Commissioner,—not an added jurisdiction upon the court.

▇▇▇ Nor, I hold, is the defendant entitled to an unconditional cancelation under Section 338 of the Nationality Code, 8 U.S. C.A. § 738. For cancelation under this statute may be ordered only "on the ground of fraud or on the ground that such order and certificate of naturalization were illegally procured." There is proof of neither such activity here.

To be sure, it is not generally desirable that a certificate should be outstanding which erroneously states the date of admission. But, on the other hand, it is neither fair to the plaintiff nor required by any compelling public policy that the plaintiff should be unconditionally and irrevocably deprived of a document which truly attests the fact, if not the date, of his citizenship. And it is scarcely likely than an error relating to a period anterior to 1908 can cause trouble hereafter. The balance between these considerations inclines against an unconditional decree of cancelation.

▇▇▇ However, the decree may provide for a cancelation conditioned upon the issue of a new, corrected certificate. In this way, the rights of the plaintiff will be served and the situation protected against all possibility of deception or misunderstandings hereafter arising from the erroneous date, remote though that possibility may be.

▇▇▇ One point as to jurisdiction, although not raised by the parties, should perhaps be noted. The complaint specifies that the jurisdiction of the court is invoked under Section 503 of the Nationality Act of 1940, 8 U.S.C.A. § 903. However, this statute only authorizes a judgment declaring a plaintiff to be a "national" of the United States. And its whole context suggests that its scope is confined to "nationals" as distinguished from citizens. As clearly appears from Section 101(a) and (b) of the Nationality Code, 8 U.S.C.A. § 501(a) and (b), the term "national" is broader than "citizen". I conclude, therefore, that the court has no jurisdiction under this statute to declare the plaintiff a citizen.

▇▇▇ However, the point seems not to be of controlling importance. For the court has jurisdiction over the subject-matter, the right invoked being one arising under a federal statute. The parties are before the court; the plaintiff now resides in this district and the defendant very sensibly has appeared without raising any technical questions as to venue which might have required the plaintiff even in these crowded

times to file suit in Washington. In this situation I apprehend that the court has jurisdiction to entertain the action under the Declaratory Judgment Act. 28 U.S. C.A. § 400; Perkins v. Elg, 99 F.2d 408, 69 App.D.C. 175, affirmed 307 U.S. 325, 59 S.Ct. 884, 83 L.Ed. 1320.

The plaintiff may submit a decree for entry on notice, unless its form is consented to.